SAM FARULLA, as President of Doll and Toy Workers' Union, an Unincorporated Association Consisting of More than Seven Members, Plaintiff, *v.* RALPH A. FREUNDLICH, INC., Defendant.

Supreme Court, New York County, August 27, 1934.

*Emil Schlesinger*, for the plaintiff.

*Lind, Shlivek, Marks & Brin*, for the defendant.

ROSENMAN, J.   The plaintiff labor union, which is the only union in the doll and toy industry in the city of New York, had an industrial dispute with the employers in their industry.   A strike was imminent.   The contending parties were called together by the New York Regional Labor Board, an agency created under the National Industrial Recovery Administration.

On March 1, 1934, the labor union and about seventy-five per cent of the manufacturers in the industry, including this defendant, signed an instrument to submit certain of the matters in dispute " to arbitration."   The instrument states: " It is further agreed that the form of arbitration shall be determined by the Regional Labor Board and is hereby accepted by the signatories of this agreement.   All parties hereto agree to abide by such arbitration and the decision of the arbitrator shall be binding upon the successors and assigns."   An arbitrator was chosen by the Board and approved by all the signatories.   Hearings were had from March 15, 1934, until April 22, 1934.   Final decision and award was rendered by the arbitrator on May 25, 1934.   It determined many matters, one of which was that the signatories were to operate only " closed shops," *i. e.*, to employ only members of the plaintiff union when available.

The plaintiff contends that this defendant manufacturer is violating the award by (1) moving its factory from New York city to Massachusetts in order to obtain non-union labor at wages below those fixed in the award; (2) by paying its employees in New York subminimum wages; (3) by locking out its employees in New York city; (4) by adding to the duties of some of its employees so as to

result in subminimum wages; (5) by sending out home work and sending work to subcontractors. An injunction is sought to restrain these breaches.

The defendant contends that (1) the instrument of March 1, 1934, is not an arbitration agreement or an enforcible agreement of any kind; (2) if it is an agreement, or if the award under it is an agreement, it is void under section 7-a of the National Industrial Recovery Act (U. S. Code, tit. 15, §§ 702 *et seq.*); (3) the plaintiff is guilty of laches; (4) the defendant is moving its factory for other legitimate reasons and not in order to avoid the award.

The instrument of March 1, 1934, is similar to countless others used in industrial disputes. It was not intended to be, and was not in fact, an arbitration under the Arbitration Law of the State of New York or under the Civil Practice Act or under the common law. It is not an agreement to make an agreement, wherein some volition is reserved to the parties as to some of the terms. By the instrument the parties appointed an arbitrator with power to write a contract for them, to which they were to be bound as soon as it was written, without further assent or act on the part of either of the parties. The arbitrator was not to decide judicially which of the parties was right; he was not to decide the merits of a controversy; he was to write a contract for the parties which he thought proper and fair under all the circumstances. This is industrial arbitration as it has been practiced innumerable times and as it is now being practiced throughout the United States. Instead of trying to write an agreement themselves, parties may agree that some one else shall. The agency here requested was one set up by the President for that purpose, as authorized by the National Recovery Act. The contract written was embodied in the award; and is as enforcible in law and in equity as though all of the parties had actually signed it.

The courts of this State have consistently enjoined threatened breaches of collective industrial agreements. (*Schlessinger* v. *Quinto*, 201 App. Div. 487; *Goldman* v. *Cohen*, 222 id. 631.)

The agreement, in so far as it provides for a " closed shop," does not violate the law as a monopoly. The amended complaint (which the court is considering on this application) states that about seventy-five per cent of the manufacturers in the industry in New York city have signed — forty-eight in number out of sixty-four, employing about 2,000 workers out of about 2,650. Under the circumstances it cannot be said that the agreement is *per se* illegal.

It does not violate section 7-a of the National Industrial Recovery Act. The act was never intended to take away any of the rights of labor which it had acquired after decades of struggle and conflict.

The section merely provides that no employee and no one seeking employment shall be required as a condition of employment to join any company union or refrain from joining, organizing or assisting a labor organization of his own choosing. It was enacted to strengthen the arm of labor in collective bargaining with capital. It sought to prevent recourse to subterfuge by employers who were able to dominate their own unions. The plaintiff is not a company union. There is no other rival labor union. Hence the act, by its very language, as well as by its clear intention, is not applicable. There is no situation here of rival unions; therefore, the fears expressed by the defendant as to its legal position if one is in future organized need not be here considered.

The " closed shop " was upheld as legal before the National Industrial Recovery Act. Surely Congress had no intention of declaring it illegal in 1933 when the act was passed; and did not so declare it.

The defendant urges that the other signatories are necessary parties here. I do not concur. The obligation is not only joint but several. Only this defendant is accused by the plaintiff of violating this agreement. There is no need of other defendants, in the absence of some affirmative showing that other signatories are guilty of similar violations.

A preliminary injunction will issue. There is nothing in the agreement, however, which prevents the defendant from moving his factory. Indeed the agreement by its terms (¶ 20) contemplates it; but provides that such removal shall not release the party from the provisions of the award. The injunction will, therefore, prevent only violation of its terms so far as is practicable under the new conditions. They may be broadened after trial, if justice requires it. If the trial disclose that the purpose of moving the factory to Massachusetts was solely, in bad faith, to violate the agreement and for no legitimate reason, and that there were no laches on the part of the plaintiff, and that the balancing of conveniences makes further injunction equitable, the plaintiff may still urge that the actual removal of the factory itself be enjoined. On this preliminary application, on conflicting affidavits, so drastic a remedy will not be granted. Settle order; and submit memoranda as to the respective proposed forms of orders, including the amount of the bond.