[L. A. No. 17421. In Bank.—July 23, 1940.]

LOUIS LEVY, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Charles J. Katz, Alfred Gitelson and Samuel W. Blum for Petitioner.

Robert Walker Kenney and Gallagher, Wirin & Johnson, as *Amici Curiae*, on Behalf of Petitioner.

J. H. O'Connor, County Counsel, Douglas De Coster, Deputy County Counsel, and Horowitz & McCloskey for Respondents.

SHENK, J.—This proceeding in *mandamus* presents the question whether the provisions of title X of part 3 of the Code of Civil Procedure apply to an arbitration award made pursuant to a collective bargaining agreement.

On November 3, 1939, a collective bargaining agreement was entered into between David Shann Corporation, women's

garment manufacturer, as the employer, called the firm, and International Ladies' Garment Workers' Union, called the union, acting on behalf of all its members. Prior to that date and in August, 1939, a labor dispute arose between the union and the firm with reference to working conditions. A strike ensued, which was called by the union. A settlement of that dispute and strike resulted in the agreement of November 3d, which named the International Ladies' Garment Workers' Union as the sole collective bargaining agent for all production employees. The union agreed to terminate the strike called on August 22, 1939, and to cease all activities in connection with a secondary boycott. The firm agreed to rehire all former union employees who were out on strike. The agreement permitted retention by the firm of certain nonunion workers, and provided that all workers then members of the union and all thereafter to be employed must be and remain members of the union. The firm agreed to call upon the union for and the union agreed to supply all future workers required. The agreement contained provisions for maintaining hour, day, wage, piece work and garment price schedules, and division of labor between union and nonunion workers. The contract was to be in force until June 30, 1941, the parties agreeing that in the meantime there would be no strike, lockout, walkout, shop strike, or shop stoppage for any reason or cause whatsoever, and the union agreed to refrain from printing or distributing any matter which might cause damage to the firm. Both parties named Anthony G. O'Rourke as impartial chairman and final arbitrator to whom all complaints, controversies, questions of interpretation of the agreement, and all other differences of the parties should be heard and determined if the parties could not in the first instance dispose of the matter. It was provided that the decision of the arbitrator should be final and binding upon the parties to the agreement, and that the expenses and fees of arbitration should be shared equally by the parties. Special provisions called for the return to work of certain named persons who were members of the union, the retention as employees of certain named workers who were not members of the union, the number of each group being about equal, and for the equal division of work among employees union and nonunion. A general provision of the agreement, designated as number 10, reads: "During such times as the firm

is unable to provide full time work for the workers of the shop, the work shall be equally divided, without favoritism, and as nearly uniform as is possible.''

During the strike the firm was employing approximately thirty nonunion workers. When the striking union workers reported back to work following the execution of the agreement the firm insisted on retaining 12 nonunion workers and reemploying only 3 union workers. A dispute immediately arose, which was heard by the arbitrator, who rendered his decision that pursuant to paragraph 10 of the agreement above quoted the firm should divide the available work by employing one union worker for each nonunion worker, and continue so to divide the work without favoritism during slack times.

On November 14, 1939, further charges of favoritism to nonunion workers and discrimination against union members were made and a hearing thereon was had before the arbitrator on the day following. On November 22, 1939, he made his findings and his decision to the effect that the firm should reemploy, on an equal basis with other workers, nine union members who were some of those specifically named in the agreement as workers whom the firm would so reemploy. The arbitrator also found the firm guilty of discrimination against union workers and of favoritism toward nonunion workers in the enforcement of regulations relating to working conditions. He made his award directing correction of the conditions without favoritism and stating that, if the firm failed to report within a specified time that such conditions had been corrected, it would ''be his unpleasant duty to declare the firm in breach of its contract''.

The award of the arbitrator dated November 22, 1939, incorporating the prior award, was duly acknowledged and filed on November 30, 1939, in the Superior Court in Los Angeles County, in proceeding numbered 447044, together with the petition of the union for an order confirming the award of the arbitrator pursuant to section 1287 of the Code of Civil Procedure. Notice in writing was duly served on David Shann Corporation, the defendant in said proceeding. The defendant filed a demurrer upon the principal ground that the Superior Court was without jurisdiction because the award was made under a contract ''pertaining to labor'', which by the proviso of section 1280 of the Code of Civil Procedure

was excepted from the operation of the arbitration statute, consisting of sections 1280 et seq. of that Code. The Superior Court sustained the demurrer solely on the ground that the collective bargaining agreement involved was a contract "pertaining to labor", and as such was not a contract of arbitration which could be enforced pursuant to the provisions of the Code of Civil Procedure. This proceeding in *mandamus* followed, wherein the union seeks to have the respondent court directed to entertain jurisdiction of the petition to confirm the award, and of the motion to vacate the award made on other grounds by the corporation.

The alternative writ issued. The matter is submitted on the petition and the demurrer and answer filed by the respondents. The petitioner is aided by briefs of *amici curiae* representing the California State Federation of Labor (A. F. of L.) and the Los Angeles Industrial Union Council (C. I. O.). By the answer it appears that prior to the filing of the petition in said proceeding numbered 447044, the David Shann Corporation filed an action, numbered 446961, in the Superior Court in Los Angeles County, against the International Ladies' Garment Workers' Union and others for rescission and cancellation of the collective bargaining agreement and for damages. However, none of the questions involved in said action or in the motion to vacate the award filed by the corporation in proceeding numbered 447044 is before this court for consideration at this time. The sole question now to be determined is whether the respondent Superior Court has jurisdiction to entertain the petition to confirm the award of the arbitrator. This is a question of first impression in this state. It is assumed, for the purposes of considering the question, that the collective bargaining agreement was entered into voluntarily by both parties and that no causes exist which would be grounds for the interposition of a court of equity in an independent proceeding or for the exercise of the powers vested in the court by the statute here considered, under the motion now before it or otherwise.

Part 3, title X of the Code of Civil Procedure, as added to and amended by Statutes of 1927, page 404, and subsequent amendments, deals with the validity and enforcement of arbitration agreements and of awards pursuant thereto. Section 1280 provides that a provision in a written contract to settle by arbitration a dispute which may thereafter arise

out of the contract, or to submit to arbitration an existing controversy, is valid, enforceable and irrevocable except on grounds existing at law or in equity for the revocation of contracts, with the proviso that "the provisions of this title shall not apply to contracts pertaining to labor". Other provisions of the title are that within three months after an award is duly made by an arbitrator under a valid agreement to submit a dispute to arbitration, any party to the arbitration may apply to the superior court for an order confirming the award and such court is directed to grant the order of confirmation (sec. 1287), unless it is vacated, modified, or corrected as prescribed by sections 1288 or 1289. By section 1291 judgment may be entered upon the confirmation of the original award, or as modified or corrected. The judgment so entered has the same force and effect as a judgment rendered in an action and it may be enforced as if it had been rendered in an action in the court in which it was entered (sec. 1292), and an appeal may be taken therefrom (sec. 1293).

The petitioning union contends that a collective bargaining agreement is not a contract pertaining to labor within the proviso of section 1280 of the Code of Civil Procedure; that a contract pertaining to labor within the meaning of that section is one for the performance of manual labor and payment therefor, made between the worker and his employer; that the collective bargaining agreement is not such a contract, but is one entered into on the one hand by the bargaining agent or trade union and, on the other, by the employer, not for performance of labor and payment therefor, but to settle the working conditions of union members who may be hired by the employer, the character of the shop, whether "closed" or otherwise, and to establish wage and hour standards. Such a contract usually provides against lockouts, strikes called by the union against the employer during the period of the contract, and secondary boycott activities. The contract also customarily contains provisions to submit any dispute arising out of the contract to a named arbitrator and for the finality and binding effect of the settlement by the arbitrator of any dispute submitted to him.

The respondents' view is that the word "labor" in connection with the applicability of the arbitration statute should be interpreted in its broadest sense; that is, if in any aspect

the contract pertains to "labor" the court should consider that it is excluded by the proviso in said section 1280; that the present case involves such a contract; and that the legislature intended by the proviso to restrict the statute to arbitration of commercial disputes, as distinguished from industrial disputes.

This court has heretofore had occasion to consider the meaning and effect of said proviso. In *Kerr* v. *Nelson*, 7 Cal. (2d) 85 [59 Pac. (2d) 821], a complaint was filed to confirm an arbitration award under a contract employing the services of the plaintiff as a sales or general manager of a corporation. It may not be doubted that an actor, or an artist, a clergyman, a general manager, sales manager or other executive, secretary, attorney, or judge, labors; but this court, following what was said in *Universal Pictures Corp.* v. *Superior Court*, 9 Cal. App. (2d) 490 [50 Pac. (2d) 500], determined that it was the obvious intention of the legislature that contracts involving individuals whose principal efforts were directed to the accomplishment of some mental task were not to be classified as contracts "pertaining to labor"; that the word "labor" as used in the section meant "that kind of human energy wherein physical force, or brawn and muscle, however skilfully employed, constitute the principal effort to produce a given result, rather than where the result to be accomplished depends primarily upon the exercise of the mental faculties". The court concluded that the contract was not one pertaining to labor, as contemplated by the proviso of section 1280 of the Code of Civil Procedure.

The courts are not justified in defining the term in its broadest sense when obviously to do so would not be within the legislative intent. This has long been a settled rule of statutory construction. (*In re Mitchell*, 120 Cal. 384, 386 [52 Pac. 799]; *People* v. *Merrill*, 24 Cal. App. 206, 210 [140 Pac. 1075], quoting from 2 Sutherland on Statutory Construction, 2d ed., sec. 363; 23 Cal. Jur., p. 766.) The case of *Church of the Holy Trinity* v. *United States*, 143 U. S. 457 [12 Sup. Ct. 511, 36 L. Ed. 226], involved the interpretation of the act of February 26, 1885 (23 Stats. 332), prohibiting the importation of aliens under contract to perform "labor or services of any kind", as applied to an alien minister residing in England who had contracted to remove to New York and become the pastor of the church. In reversing a

judgment based on a broad definition of the terms of the statute the court said: "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application."

■ The considerations bearing upon the question of the intent of the legislature in excluding contracts "pertaining to labor" from the arbitration agreement enforcement statutes lead to the conclusion that the legislature had in mind contracts pertaining to the actual hiring of labor between employer and laborer. The legislature did not itself define what is a contract pertaining to labor. It was left for interpretation by the courts. But the legislature has since defined labor (sec. 200(b) Labor Code) as including "labor, work, or service whether rendered or performed under contract, sub-contract, partnership, station plan, or other agreement if the labor to be paid for is performed personally by the person demanding payment". That definition plainly indicates that a contract pertaining to labor means a promise to perform labor and a promise to pay therefor a stipulated price. The elements involved in that definition are absent from a collective bargaining agreement, which is distinct and separable from a contract of hiring. The function of the collective bargaining agreement is to lay down the relative duties or obligations to be observed between the employer and the union, and itself contemplates that the contract of hiring shall be a distinct and separate transaction.

Prior to 1927 the provisions of the Code of Civil Procedure permitted parties to submit to arbitration only existing controversies (except specified questions relating to real property) which might be the subject of a civil action between them; and while the submission to arbitration remained executory and there was no stipulation that it be entered as an order of court, it was revocable by either party. (See *California Annual Conference* v. *Seitz*, 74 Cal. 287, 291 [15 Pac. 839]; *Sidlinger* v. *Kerkow*, 82 Cal. 42, 46 [22 Pac. 932].) The former provisions were based upon a public policy then existing which was averse to permitting parties to deprive themselves of their right of resort to the courts.

In 1927 (Stats. 1927, p. 404), the legislature added sections 1280 and 1291–1293 to the Code of Civil Procedure, and en-

larged the provisions of the remaining sections of title X, part 3, to encompass a procedure for enforcement of awards under voluntary arbitration agreements. The statute has been held to be constitutional (*Pacific Ind. Co.* v. *Insurance Co. of N. A.*, 25 Fed. (2d) 930) and no question of its constitutionality is here involved. There was undoubtedly a basic reason for excluding labor agreements. A contract to perform labor is not specifically enforceable, with certain exceptions not pertinent here. (Sec. 526 (5), Code Civ. Proc.; secs. 3390, 3423 (5), Civ. Code.) The same considerations pertaining to the personal relations between employer and employee would indicate that contracts between them should not be subject to the provisions of the arbitration title in the Code of Civil Procedure. But the considerations which would except contracts to perform labor from such proceedings do not exclude collective bargaining agreements. The general rule stated in connection with the specific enforcement of arbitration awards is found in 5 Cor. Jur., page 228, where it is stated: "An award being looked upon as a contract of the parties, so far as relates to specific enforcement, reference should be had to the general treatment of that subject in determining the right to specific performance. It has been said that many, if not all, the principles applicable to ordinary suits for the specific performance of agreements apply to suits for the specific performance of awards. Broadly speaking, specific performance will be enforced only when the thing ordered by the award to be done is such as a court of equity would specifically enforce if it had been agreed upon by the parties themselves." Voluntary collective bargaining agreements, including awards made under arbitration provisions therein, have been held to be specifically enforceable. (*Harper* v. *Local Union No. 520*, (Tex. Civ. App. 1932) 48 S. W. (2d) 1033; *Kaplan* v. *Bagrier*, 12 Pa. Dist. & Co. Rep. 693, 697; *Grassi Contracting Co.* v. *Bennett*, 174 App. Div. 244 [160 N. Y. Supp. 279], and cases cited; *Schlesinger* v. *Quinto*, 201 App. Div. 487 [194 N. Y. Supp. 401]; *Goldman* v. *Cohen*, 222 App. Div. 631 [227 N. Y. Supp. 311]; *Ribner* v. *Racso Butter & Egg Co., Inc.*, 135 Misc. 616 [238 N. Y. Supp. 132]; *Farulla* v. *Ralph A. Freundlich, Inc.*, 152 Misc. 761 [274 N. Y. Supp. 70].)

It has also been held that a statute providing for enforcement of arbitration awards which excludes contracts per-

taining to "personal services" does not have reference to collective bargaining agreements. The case of *Kaplan* v. *Bagrier, supra,* involved an action to confirm an arbitrator's award under a collective bargaining agreement between a bakers' association and a union of employees. The court said: "it is to be presumed that the descriptive term 'personal service' was used in section 1 of the Arbitration Act in its ordinary and commonly accepted meaning as applicable to a situation where one performs personal services; that is to say, having reference to a servant or employee who voluntarily agrees to subject himself at all times during the period of service to the control, orders and directions of another, his employer, with reference to certain services to be performed. There is no personal service element in the contract of May 1, 1928, in so far as the rights and obligations of two groups, Union and the Association are concerned. The contract is not confined to the usual relationships between master and servant, but has a much wider and broader scope, being a collective bargaining agreement intended to fix certain rights and obligations between the two groups mentioned, one the group of employers and the other the group of employees, for their mutual interests. It is not a direct personal service contract within the contemplation of the exception in the act." The respondents here assert that that case does not represent the rule of decision in the State of Pennsylvania. It may be that the result would be deemed to have been modified by the decision of the Supreme Court of that state in *Goldstein* v. *International Ladies' Garment Workers' Union,* 328 Pa. 385 [196 Atl. 43], wherein the court pointed out that the arbitration statute was so worded as to be restricted to cases wherein a judgment at law could be entered and enforced as such. It said that many states had adopted arbitration statutes but that only in Pennsylvania and Rhode Island was the statute so worded. In that case the labor union proceeded under the arbitration statute to seek confirmation of an arbitration award under a collective bargaining agreement. The award involved equitable relief against removal of the employer's factory contrary to express agreement. The court said that the union could have proceeded on the basis of common law arbitration, but because of the limitation in the arbitration statute confirmation of an award which included equitable relief could not be procured by the statutory pro-

cedure. The reasoning of the opinion in the case of *Kaplan* v. *Bagrier, supra,* however, is worthy of note where the statutory procedure, such as in this state, is not limited to legal as distinguished from equitable remedies.

In *Harper* v. *Local Union No. 520, supra,* the court held that mutuality of remedy for equitable relief by injunction existed under a collective bargaining agreement because the agreement in its collective aspect is not one for personal service.

In *Schlesinger* v. *Quinto, supra* (decided in 1922) the court observed: ''The cases thus far decided have been at the suit of the employer against combinations of labor, for the simple reason that this is the first time that labor has appealed to the courts. . . . The remedies are mutual; the law does not have one rule for the employer and another for the employee.''

In *Goldman* v. *Cohen, supra,* decided in 1928, the court said: ''Usually in the past it has been the employer who has sought help of the courts for the protection of his rights, but obviously the same principles of law apply equally to both employer and labor union. Where a strike is threatened by a labor union in violation of its contract with an employer, the right of a court of equity to issue an injunction to prevent such contractual violation is well settled. . . . Likewise, where an employer is threatening to order a lockout of his employees in violation of his contract with the labor union in behalf of the employees, the right of a court of equity to prevent such contractual violation is necessarily measured by the same principle. . . . If the union has not the right to invoke the aid of a court of equity to prevent the unlawful violation of a contract such as exists in the case at bar, then such a contract loses most of its force, and the rights of collective bargaining are narrowed and the economic benefits to the community from collective bargaining to a great extent lost.''

In the same vein, in the case of *Ribner* v. *Racso Butter & Egg Co., supra,* the court said: '' . . . the right of a labor union to enforce the terms of a lawful contract such as exists between the parties in the instant case should not be determined by the character of the services to be performed by the members of the union, but should rest upon the mutual rights and obligations of the parties under their contract. It is well settled that an employer may avail himself of the relief afforded by a court of equity to enforce his rights under such

a contract with a labor union. Conversely the union should be afforded reciprocal relief to enforce its rights under the contract with the employer. . . . To deny to the plaintiff union the right to invoke the aid of a court of equity to prevent an unlawful violation of its contract, it must necessarily follow that the right of collective bargaining will be seriously impaired, leaving the labor union to resort solely to strikes and picketing which would entail, not only serious financial loss, but also protracted and needless friction and possible breaches of the public peace and security. It is fitting that industrial struggles be settled by modern methods of procedure as now laid down by the courts. . . . Legislatures and courts recognize the right of labor unions to enter into lawful contracts on behalf of their members with the employer for the purpose of promoting the welfare of their members, and in furtherance thereof such agreements should be clothed with legal sanction and afforded the mutual protection of the law. It is in the interest of good government that labor unions should be afforded this reciprocal protection in their lawful contractual undertakings. It is proper and praiseworthy that a union, as in the instant case, having entered into a contract with the employer and feeling aggrieved because of an alleged breach thereof by the employer should come into a court of equity and there seek the protection of its rights rather than to resort to picketing and strikes to redress its wrongs, with the resultant effect upon the orderly conduct of business and inconvenience to the public. Under the terms of the contract here presented there is mutuality of obligation. There should be mutuality of remedy. The contract is valid. The power of a court of equity to issue an injunction to prevent such alleged violation is well established. Plaintiff's prayer for an injunction during the pendency of the action restraining the defendant from hiring none but members of the union in its establishment is granted.''

Our conclusion that the arbitrator's award pursuant to the terms of a voluntary collective bargaining agreement is enforceable and that it was not the legislative intent to exclude such contracts from the provisions of section 1280 of the Code of Civil Procedure, is in harmony with legislative declarations. In the Labor Code adopted in 1937, by section 923 thereof, the legislature declared the public policy of the state with reference to labor organizations as follows: ''Nego-

tiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of association, self-organization, and designation of representatives of employment. Therefore, it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.'' This declaration evidences the existence of a policy to uphold the freedom of employees to organize and to enter into collective bargaining contracts for their own protection. This policy had previously been declared in 1933 (Stats. 1933, p. 1478). Again, in 1939 (Stats. 1939, chap. 810), the legislature added section 65 to the Labor Code, which vested in the department of industrial relations power to investigate labor disputes and mediate, arbitrate, or arrange for the selection of boards of arbitration, providing all *bona fide* parties to such disputes join in a request for intervention by the department. It would be difficult to uphold such a policy without recognizing the right of enforcement of collective bargaining contracts when voluntarily entered into by the unions.

It is further brought to our attention that arbitration under collective bargaining agreements has been one of the most potent factors in establishing and maintaining peace and protection in industry (see *National Labor Relations Board* v. *Friedman-Harry Marks Clothing Co.*, 301 U. S. 58 [57 Sup. Ct. 645, 81 L. Ed. 921, 108 A. L. R. 1352], 17 Or. Law Rev., pp. 263–288); and that organized labor is more and more resorting to the courts for recognition of the lawfulness and enforceability of collective bargaining agreements, rather than electing to settle its disputes by other methods. (See 44 Har. Law Rev., pp. 601–608; 51 Har. Law Rev., pp. 520–533; see, also, reports of Standing Committee on Commerce, Trade and

Commercial Law, vol. 51, Reports of Am. Bar Assn., 394 et seq.; and vol. 53, Rep. of Am. Bar Assn., pp. 351–372.)

. The respondents present no legislative history which indicates that the proviso was inserted in section 1280 for the purpose of excluding collective bargaining contracts. The bill introducing the measure without the proviso was before the Assembly in January, 1927, designated as Assembly Bill No. 460. The proviso was inserted by amendment in the committee on March 1, 1927. It is asserted that in the movement for uniform state legislation on arbitration, both commercial and industrial, a form of State Arbitration Act contained the proviso that "the provisions of this Act shall not apply to collective contracts between employers and employees, or between employers and associations of employees, in respect to terms or conditions of employment", and that such a draft was tendered to the California legislature in 1927. It is stated that such a provision has been included in the statutes of Arizona, New Hampshire, Rhode Island and Oregon. The respondents argue that by the omission of such specific provision from the California statute and the use of the proviso excluding contracts "pertaining to labor", the legislature intended also to exclude collective bargaining contracts. But it would seem more reasonable to expect a specific provision to that effect if the legislature intended to exclude collective bargaining contracts from the operation of the statute.

Lastly, the respondents point out that the contract and the award here involved provide that the corporation should reemploy certain specified union members who had been regular employees of the corporation prior to the inception of the dispute. They contend that because of those provisions the considerations are present which exclude from specific enforcement contracts to perform labor or personal services, and which therefore designate this collective bargaining agreement as a contract pertaining to labor.

We do not agree that the possible effect of any confirmation which the court may grant will be to enforce specifically a contract or award for the performance of labor. Courts have enjoined the discharge of union workers, where there was no dispute as to their competency, and the employment of nonunion workers in their stead, in violation of collective bargaining agreements. (Note, 51 Har. Law Rev., p. 526,

706

citing *Harper* v. *Local Union No. 520, supra; Ribner* v. *Racso Butter & Egg Co., supra,* and other cases. See, also, Comment in 19 Cal. Law Rev., at p. 192.) The present collective bargaining agreement and the award contemplate that the wage to be paid the worker is a matter for adjustment between him and the employer, subject to certain standards; that there shall be no compulsion in so far as either is concerned—the worker may quit his job, and the employer may discharge him for cause. If the employer, therefore, under his contract with the union may be compelled to employ an ascertainable number of union members so long as the agreement subsists and he remains in business—and the decisions herein cited so indicate—then there can be no objection to the contract or the award merely because such workers are designated by name. No distinction can be accorded such a contract or award because it happens to name the particular workers when, if unnamed, the employer would be compelled to accept the same workers. Any showing which may be made that they are unacceptable because incompetent is not a question going to the jurisdiction of the court.

It follows from what we have said that the respondent Superior Court has jurisdiction to entertain the proceeding before it and that the alternative writ of mandate heretofore issued herein should be made peremptory.

It is ordered that the peremptory writ issue accordingly.

Curtis, J., Edmonds, J., Carter, J., and Gibson, C. J., concurred.