[Civ. No. 17764. Second Dist., Div. Two. July 28, 1950.]

C. P. MYERS et al., Appellants, v. RICHFIELD OIL CORPORATION, Respondent.

Wirin, Rissman & Okrand for Appellants.

William H. Powell for Respondent.

WILSON, J.—Appeal from order and judgment denying petition under section 1282* of the Code of Civil Procedure for an order directing arbitration.

---

*Section 1282 reads as follows: "A party aggrieved by the failure, neglect or refusal of another to perform under an agreement in writing providing for arbitration may petition any superior court of the county or city and county where either party resides, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of the hearing of such

The facts, about which there is no dispute, are as follows:

Jack F. Frazier, hereinafter called appellant, began to work for respondent in November, 1945. In September, 1948, the Oil Workers International Union, C.I.O., of which appellant is a member, called a strike against respondent and in response to the union's call appellant went on strike. Prior to the termination of the strike respondent filled the position previously held by appellant. On November 9, 1948, the union and respondent entered into a strike settlement agreement and on November 11, 1948, they executed "Articles of Agreement." On November 12, 1948, appellant was offered a new job in another district, which he declined in writing. On January 10, 1949, he was again offered a job which he accepted. When he went back to work on February 10, 1949, he was classified as a new employee with seniority dating from that date.

█ Appellant's classification as a new employee and the loss of seniority resulting therefrom is the basis of his grievance and the refusal of respondent to arbitrate either the grievance or the question whether or not the grievance is subject to the arbitration clause of the agreement of November 11, 1948, is the basis of the instant action.

Appellant contends that the grievance comes within the provisions of Article XXII of the Articles of Agreement; that an agreement to arbitrate having been shown and respondent's refusal to arbitrate being clear, an order directing arbitration should have been made.

Respondent admits the execution of the Articles of Agreement and its refusal to arbitrate. It also admits the sole

---

application shall be served personally upon the party in default. The court shall hear the parties, and upon being satisfied that the making of the agreement or such failure to comply therewith is not in issue, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the agreement or the default be in issue an order shall be made directing a summary trial thereof. Where such an issue is raised, the party alleged to be in default, may, on or before the return day of the notice of application, demand a jury trial of such issue, and if such demand be made, said court shall make an order referring the issue or issues to a jury called and impaneled in the manner provided for the trial of actions at law. If no jury trial be demanded said court shall hear and determine such issue. If the finding be that no agreement in writing providing for arbitration was made, or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the finding be that a written provision for arbitration was made and there is a default in proceeding thereunder, an order shall be made summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."

question for determination by the court is whether a contract is in existence under which arbitration may be ordered. It contends, however, that appellant's grievance does not come within the provisions of the Articles of Agreement of November 11, 1948, but is governed by the strike settlement agreement of November 9, 1948, which contains the rules and procedure for the return of the strikers to work; that appellant was not an employee when his grievance arose.

So much of paragraph 12 of the strike settlement agreement, containing the provisions with respect to the return of employees to work, as is pertinent to the issues herein reads as follows: "(b) The Employer will schedule the assignment of employees who return to work and who are reinstated, in accordance with an orderly plan to be worked out by the Employer to meet work schedules. If any employee has a grievance arising from his assignment, he shall file such grievance arising from his assignment with Local Management within ten (10) days after the signing of the new Articles of Agreement. Such grievance shall not be processed through the grievance procedure provided for in the new Articles of Agreement, but shall be referred to and heard by the same committee provided for in (a) above. Such committee will conduct a hearing on such grievance, and a representative of the Union may be present at such hearing and assist the employee in the presentation of his grievance. All such cases shall be completed and disposed of within forty (40) days from the date of the signing of the new Articles of Agreement. After the expiration of such period of forty (40) days, the provisions of the new Articles of Agreement in reference to seniority will be given full force and effect, except that no grievance disposed of during such forty (40) day period shall be revived or be used as the basis for a new grievance or shall be made the basis of any claim or right by an employee affected by such grievance under the new Articles of Agreement or any provision thereof; provided, however, that nothing herein shall be construed to constitute or operate as a waiver of any right any employee may have under the Labor-Management Relations Act, 1947."

Contrary to respondent's contention, appellant's grievance did not arise until February 10, 1949, when he went back to work and was classified as a new employee and thereby lost his seniority. It therefore arose after the expiration of the

40-day period during which his grievance could be processed under section 12(b) of the strike settlement agreement.

Section 1450 of the New York Civil Practice Act is substantially the same as section 1282 of our Code of Civil Procedure. The courts of that state have repeatedly held that on motions to stay or to compel arbitration the only issues which may be raised are whether an agreement to arbitrate was made and whether one of the parties has refused arbitration; that every other issue, whether legal or factual, must be left exclusively for determination by the arbitrators. (*Lipman* v. *Haeuser Shellac Co.*, 289 N.Y. 76 [43 N.E.2d 817, 819, 142 A.L.R. 1088]; *Building Serv. Emp. Int. Un.* v. *Westchester Country Club*, 94 N.Y.S.2d 642, 643; *Application of Swift & Co.*, 76 N.Y.S.2d 881, 883; *Mencher* v. *B. & S. Abeles & Kahn*, 84 N.Y.S.2d 718, 723.)

In the Lipman case, *supra,* the contract contained a clause that "Any and all controversies in connection with, and/or arising out of, this contract shall be exclusively settled by arbitration . . ." The court stated that while it had no power to grant a motion to compel arbitration unless the subject matter is comprised within the agreement to arbitrate, the agreement must be considered in the light of the broad language used in the arbitration statute which seems to imply that all the acts of the parties subsequent to the making of the contract which raise issues of fact or law lie exclusively within the jurisdiction of the arbitrators; that the language of the agreement to arbitrate must be sufficiently broad to permit of the application of the general principle that all issues subsequent to the making of the contract are for the arbitrators and not for the court. The court held that the language used in the arbitration clause was sufficiently broad to express the intention of the parties to include within the exclusive jurisdiction of the arbitrators as a general rule all acts of the parties giving rise to issues in relation to the contract except the making thereof.

In *Hudson Wholesale Grocery Co.* v. *Allied Trades Council,* 3 N.J. Super. 327 [65 A.2d 557], the court stated that the language of the New Jersey statute was identical with that of New York and approved the holding of the court in the Lipman case.

The Articles of Agreement in the instant case provide, in section XXII thereof, for the arbitration of "any grievance or dispute arising out of the application of any of the terms of this Agreement." Article VI of the agreement contains the

provisions relative to seniority. Appellant maintains that when he went back to work on February 10, 1949, he was in the status of a "laid-off" employee and should not have lost any of his seniority rights or been classified as a new employee. Respondent's contentions are: that it had a legal right to fill appellant's position by a permanent replacement; after the position was filled by a permanent replacement during the strike appellant was no longer an employee; appellant's status as an employee was properly terminated by his refusal to accept the employment offered him; appellant's grievance was reviewable only under the strike settlement agreement; even if appellant's grievance is arbitrable under the Articles of Agreement, he failed to take the first step required by the procedure set forth in section XXII; when he filed his grievance with the National Labor Relations Board he initiated a proceeding wholly inconsistent with a right to arbitration.

It has long been the policy in California to recognize and give the utmost effect to arbitration agreements. As stated in *Utah Construction Co.* v. *Western Pacific Ry. Co.,* 174 Cal. 156, 159 [162 P. 631]: "The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing . . . Therefore every reasonable intendment will be indulged to give effect to such proceedings." This policy is especially applicable to collective bargaining agreements since arbitration under such agreements has been a potent factor in establishing and maintaining peaceful relations between labor and industry. (*Levy* v. *Superior Court,* 15 Cal.2d 692, 704 [104 P.2d 770, 129 A.L.R. 956].)

Section 1282 of the Code of Civil Procedure provides that the court "upon being satisfied that the making of the agreement or such failure to comply therewith is not in issue, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." There is no dispute as to the making of the agreement or the refusal to arbitrate. The language of the arbitration clause is sufficiently broad to include all the issues raised by the contentions of the parties. Whether (1) appellant's status as an employee was properly terminated; (2) he lost his seniority and his status as an employee upon his refusal to accept the first position offered to him; (3) his only recourse was under section

12(b) of the strike settlement agreement; (4) he failed to properly pursue the remedy afforded him under section XXII of the Articles of Agreement; (5) the proceedings before the National Labor Relations Board constituted a waiver of any rights appellant might have and other issues raised by respondent are matters for the arbitrators to decide.

Order and judgment reversed with directions to enter an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied August 16, 1950, and respondent's petition for a hearing by the Supreme Court was denied September 21, 1950.