## Rothstein, etc., v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Local 401, et al.

*Max Rosenn*, for plaintiff.

*Charles J. Bufalino*, for intervenors.

*Herman J. Goldberg, Ernest K. Herskovitz* and *John F. O'Malley*, for defendants.

PINOLA, J., October 10, 1951.—Plaintiff asks for an injunction restraining defendant union and its officers,

individually, from continuing a strike at his place of business on South Washington Street, in the City of Wilkes-Barre, on the ground that it is in violation of the existing collective bargaining agreement between them and for damages sustained by reason of the strike.

By agreement of the parties, an application for a preliminary injunction was withdrawn on condition that the employes return to work and that an answer be filed to the merits as well as any other pleadings before September 1, 1951. It was agreed further that if preliminary objections were filed, they should be disposed of prior to trial and notwithstanding the filing of an answer.

Preliminary objections have been filed and these we proceed to consider in the order in which they appear.

In objection (a) defendants aver that the bill fails to establish whether or not a labor dispute exists.

It is true, as suggested, that in paragraph 11 of the bill plaintiff avers that no grievance or dispute of any kind is in existence between plaintiff and his employes, but in paragraphs 10 and 12 plaintiff clearly avers that there exists a dispute between him and defendant union. Since paragraph 10 of the collective bargaining agreement provides that not only disputes between employer and employe but disputes between employer and the union shall be arbitrated, this objection is without merit.

In objection (b) defendants complain that they cannot ascertain whether the claimed right of plaintiff to an injunction is based on an exception to the Labor Anti-Injunction Act or on the broad equity powers of the court.

A careful reading of the bill and especially paragraph 9 of the same reveals that the action is brought to enjoin a strike called in violation of the collective bargaining agreement existing between the parties.

Such an action, even if it involves a labor dispute, is expressly exempt from the provisions of the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, sec. 4, as amended, 43 PS §206d(a) : Carnegie-Illinois Steel Corp. v. United Steel Workers of America et al., 353 Pa. 420. Here there is no "labor dispute" as defined by section 3 of that act, 43 PS §206c(c) : Dorrington et al. v. Manning et al., 135 Pa. Superior Ct. 194.

So this objection is likewise without merit.

Defendants in objection (c) contend that in paragraph 14 of the bill plaintiff avers that unlawful acts have been committed without specifying their nature. Again a careful reading of paragraph 14 reveals that the unlawful acts referred to are those which were "hereinbefore described and which have already been committed or have been threatened will be continued."

Therefore, there is no merit to this objection.

Defendants contend in objection (d) that in paragraph 11 plaintiff avers there is "no dispute of any kind in existence" and hence there is no dispute to arbitrate. That is not so. In paragraph 11, plaintiff states there is "no dispute between the plaintiff or any of its employes." In paragraphs 5 and 12, a dispute between plaintiff and defendants is clearly set forth.

Objection (e) is the most serious one. Defendants contend that they are not required to arbitrate because (1) this contract being "a contract for personal services," is specifically exempt from the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §161, and (2) that because the contract contains no designated arbitrators, it is revocable, and has, in fact, been revoked by defendants' refusal to arbitrate.

Considering the arbitration feature of the contract, we find two decisions in our State, both dealing with awards in arbitration. Judge Kun held in Kaplan et al. v. Bagrier et al., 12 D. & C. 693, that the exception of "contract for personal services" did not apply to

collective bargaining agreements. He said (p. 698) :

"The contract is not confined to the usual relationships between master and servant, but has a much wider and broader scope, being a collective bargaining agreement intended to fix certain rights and obligations between the two groups mentioned, one the group of employers and the other the group of employees, for their mutual interests. It is not a direct personal service contract within the contemplation of the exception in the act.

"The matter in controversy is not at all concerned about any question of personal service, but arose out of the question whether the Union's action as a group in conducting an enterprise through a corporation in competition with their employers was subversive of their mutual interests."

And he further observed (p. 698) :

"Contracts between employers and a labor union must be given a reasonable construction so as to maintain their entire validity, if possible."

With this, Judge Smith disagreed in Retail Cigar, etc., Union v. Sun Ray Drug Co., 67 D. & C. 512.

We have here to deal with a request for injunctive relief rather than any feature of the Arbitration Act, but we agree with the reasoning of Judge Kun. And so does the Supreme Court of the United States. In Case v. National Labor Relations Board, 321 U. S. 332, Mr. Justice Jackson pointed out clearly the distinction between a collective bargaining agreement and a contract for personal services. He said (p. 334) :

"Contract in labor law is a term the implications of which must be determined from the connection in which it appears. Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except

in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment. . . ."

Continuing (p. 335):

"After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. The employer, except as restricted by the collective agreement itself and except that he must engage in no unfair labor practice or discrimination, is free to select those he will employ or discharge. But the terms of the employment already have been traded out. There is little left to individual agreement except the act of hiring. This hiring may be by writing or by word of mouth or may be implied from conduct."

And, at page 336:

"The individual hiring contract is subsidiary to the terms of the trade agreement. . . ."

This distinction was cited with approval in Lewittes & Son et al. v. United Furniture Workers of America, 95 F. Supp. 851 (S. D., New York, March 1, 1951). The court, dealing with an exception similar to ours excluding contracts of employment of workers engaged in commerce from an Arbitration Act, declared (p. 855):

"The exception in Section 1 was intended to avoid the specific performance of contracts for personal services in accordance with the traditional judicial reluctance to direct the enforcement of such contracts and it was not intended to apply to collective labor agreements."

And, in discussing the policy of bringing about peaceful solutions of labor disputes without recourse to industrial strife, it continued (p. 856):

"Where the parties manifest a purpose to dispose of their disputes by arbitration rather than resort to the use of economic force or pressures, their agreements should be liberally construed with a view toward the encouragement of arbitration. Kulukundis Shipping Co. v. Amtorg Trading Corp., supra. The courts should be reluctant 'to strike down a clause which appears to promote peaceful labor relations rather than otherwise.' Shirley-Herman Co. v. International Hod Carriers, supra, 187 F. 2d at page 810":

In MacKay v. Loew's, Inc. et al., 182 F. 2d 170 (C. C. A., 9th Cir.), the court declared (p. 172):

"A collective bargaining agreement is not a contract of employment. Rather it is an agreement between the union and employer laying down certain conditions of employment which, it is contemplated, are to be incorporated in the separate contracts of hiring with each employee. Levy v. Superior Court in and for Los Angeles County, 1940, 15 Cal. 2d 692, 699, 104 P. 2d 770, 774."

Certiorari was denied in this case: 71 S. Ct. 65 and 71 S. Ct. 194.

The latest decision in line with this precedent is that rendered in Pennsylvania Greyhound Lines, Inc., v. Amalgamated Association of Street, etc., Employees, 20 Labor Cases 80065 (W. D. Penna., August 3, 1951), in which the court held, following United Office & Professional Workers of America, CIO, v. Monumental Life Ins. Company, 88 F. Supp. 602, that a collective labor contract was not a contract of employment within the meaning of section 1 of the United States Arbitration Act, which excludes contracts of employment.

While the problem before us has not yet reached our appellate courts, in Goldstein et al. v. International Ladies' Garment Workers' Union et al., 328 Pa. 385, the court held that arbitration agreements in a collec-

tive bargaining agreement were enforcible and stated (p. 394):

"At the risk of repetition, however, attention is again directed to the fact that the enforcement of arbitration clauses in collective bargaining agreements, and of awards made thereunder, are not dependent upon any Act of Assembly. The Arbitration Act of 1927 did not displace old-time arbitration under the common law: Isaac v. Donegal & Conoy Mutual Fire Insurance Co., 301 Pa. 351, 357, 358. In a proceeding by bill in equity the court can determine whether appellants were parties to the agreement between the Union and the Association containing the provision for arbitration, and can specifically enforce any award that the arbitrator may make thereunder to the extent to which it could compel specific performance had the award been contractually agreed upon by the parties themselves."

And in Miller v. Johnstown Traction Company, 167 Pa. Superior Ct. 421, a judgment based upon a collective bargaining agreement arrived at through an arbitration article contained therein, was held enforcible.

As for the contention that the arbitration agreement is revocable because the arbitrators were not designated, we agree that, at common law, such result would follow: Commercial Union Assurance Co. v. Hocking, 115 Pa. 407; Mount Lookout Coal Co. v. Schooley et al., 12 Luz. 263.

However, it is now settled that where an agreement to arbitrate disputes "partakes of the nature of a contract, in which important rights are gained or lost, and the submission is one of the moving considerations, it can be revoked only by mutual consent": Bashford v. West Miami Land Co., 295 Pa. 560, 567.

Continuing, the court said (p. 567):

"Where arbitration has to do with the very subject-

matter of the contract on which the existence of the parties' obligations depend, and has been in part executed, it is beyond the power of one of the parties to revoke; such action would, in this case, change the effect of the whole agreement, which was to give the vendor a right to review the referee's findings."

Furthermore, it declared (p. 568) :

"It is clear, every reasonable intendment will be made in favor of the validity of such agreements; . . ."

Here the contract became effective June 14, 1951, and both parties have been operating under its provisions since that date.

The public policy of the State of Pennsylvania is opposed to construing arbitration provisions in collective bargaining agreements as revocable. Collective bargaining agreements have taken on new and tremendous significance since the Arbitration Act of 1927 and have become landmarks in industrial relations. As has already been observed, the pledge not to strike but to arbitrate disputes is its cornerstone.

In defining public policy in labor relations, the legislature declared, Act of June 2, 1937, P. L. 1168, sec. 2, 43 PS §211.2(b) :

"Experience has proved that protection by law of the right of employes to organize and bargain collectively removes certain recognized sources of industrial strife and unrest, encourages practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours or other working conditions, and tends to restore equality of bargaining power between employers and employes."

Previously, in furtherance of the policy to encourage settlement of controversies in labor problems and avoid strikes and industrial strife, it had enacted the Pennsylvania Labor Mediation Act of May 18, 1937, P. L. 674, 43 PS §211.32 and, in section 2 thereof, declared:

"It is the public policy of the Commonwealth to encourage employers and employes by their representatives to make and maintain agreements concerning wages, hours, and conditions of employment, and to settle all controversies arising out of the application of such agreements."

We are satisfied that the agreement before us is not one of personal service, and that it cannot be revoked except by mutual consent.

In objection (f) defendants contend that plaintiff has failed to set forth how defendants have violated the territorial clause of the contract referred to in paragraph 9.

They are right. The averments of that paragraph are ambiguous. We believe that plaintiff intended to say that defendants had unlawfully called the strike because plaintiff had full authority under the contract to deal with the territory allotted to salesmen as he saw fit. However, he has not said so. Therefore, this objection must be sustained.

In objection (g) defendants allege that plaintiff fails to aver in paragraph 5 that the dispute in existence has to do with the "interpretation" of the contract.

While plaintiff does not aver that the dispute involves the "interpretation" of the contract, it nevertheless appears from the bill that there is a dispute between him and defendants over the meaning of paragraph 11 (f) of the agreement between them. Under that paragraph, he contends that he has the right to accept the resignation of employes and to rehire them as distributors of his products in certain allocated territory. On the other hand, defendants themselves insist that under the same paragraph and paragraph 8, he has no right to make such contracts either with employes, who are governed by the existing agreement, or with outsiders.

Defendants urge in objection (h) that plaintiff is not entitled to an injunction because he can compel arbitration under section 3 of the Arbitration Act of 1927.

As we understand it, plaintiff will pursue his remedy under the Arbitration Act. In the meantime, however, his business is at a standstill and may be ruined, and, therefore, he asks injunctive relief because the strike is called in violation of the agreement between him and defendants. We feel that he is entitled to this protection.

In consequence of the foregoing, we enter the following

*Order*

Now, October 10, 1951, we sustain objection (f) and direct plaintiff to amend paragraph 9 of the bill if he deems the allegation therein contained to be material. All other objections we dismiss.

The prothonotary is directed, in pursuance of the order of August 15, 1951, based upon agreement of counsel, to list this case for final hearing during the week of October 29, 1951, at which time all questions raised by the pleadings shall be determined.