[S. F. No. 20434.   In Bank.   May 8, 1961.]

BROADWAY-HALE STORES, INC. (a Corporation), Appellant, v. RETAIL CLERKS UNION, LOCAL NUMBER 428, AFL-CIO, Respondent.

Sheppard, Mullin, Richter & Hampton, Frank Simpson III and David A. Maddux for Appellant.

Garry, Dreyfus, McTernan & Keller and Benjamin Dreyfus for Respondent.

Charles P. Scully, Victor Van Bourg, Bodle & Fogel, George E. Bodle, Daniel Fogel, Stephen Reinhardt and Robert A. Smith as Amici Curiae on behalf of Respondent.

SCHAUER, J.—Hale Brothers Stores, hereinafter called Hale, appeals from a judgment of the superior court confirming an arbitration award in favor of Retail Clerks Union, Local Number 428, AFL-CIO, hereinafter called the Union, pursuant to which Hale was ordered to offer reinstatement and back pay to five employes whose employment it had terminated solely because they were 65 years of age. We have concluded that attacks made by Hale upon the award are without merit, and that the judgment should be affirmed.

Commencing in 1945, the Union has had successive collective bargaining agreements with Hale. During the years 1958 and 1959 Hale terminated five employes for the reason that they were over 65 years of age. No claim was made that any of the employes was unable to perform his or her duties properly.

The Union claimed the terminations were in violation of the collective bargaining agreement between itself and Hale, and requested arbitration of the matter. The Union and Hale by an exchange of letters agreed to arbitrate. Following a hearing, the arbitrator rendered an award upholding the position of the Union and ordering that the employes be offered reinstatement with fifty percent back pay, less interim earn-

ings and unemployment insurance received. As already related, the award was confirmed by the superior court, and this appeal by Hale followed.

Preliminarily it may be observed that section 1126 of the Labor Code specifies that "Any collective bargaining agreement between an employer and a labor organization shall be enforceable at law or in equity, and a breach of such collective bargaining agreement by any party thereto shall be subject to the same remedies, including injunctive relief, as are available on other contracts in the courts of this State," and this court has held that such a contract, "assuming lawful objectives, can be specifically enforced through arbitration or court action. . . ." (*Chavez* v. *Sargent* (1959), 52 Cal.2d 162, 206 [48] [339 P.2d 801] ; see also Code Civ. Proc., § 1280; *Levy* v. *Superior Court* (1940), 15 Cal.2d 692, 697-703 [1-4] [104 P.2d 770, 129 A.L.R. 956].)

As grounds for reversal in the present case Hale first urges that the issue of the terminations was not arbitrable under the provisions of the collective bargaining agreement, and that the arbitrator therefore exceeded his powers by making an award thereon. (See Code Civ. Proc., § 1288, subd. (d).) This contention is without merit. Although there is no language in the agreement dealing specifically with termination of employment for age, the following pertinent provisions do appear:

"Section 3. Discharge and Discrimination

"(a) The Employer shall have the right to discharge any employee for unbecoming conduct, insubordination, incompetency, neglect of duty, failure to perform work as required but not contrary to the terms of this agreement, . . .

"(b) In case any employee who has been discharged for any of the reasons set forth in subsection (a) hereof, *or for any other reason* [italics added], shall feel that he or she has been unjustly discharged, such employee shall have the right to appeal through the Union to the Adjustment Board [the arbitrator, in the case at bench] . . ."

"Section 5. Seniority

"(a) When it is necessary to lay off or rehire employees, the principle of seniority and period of service among employees will be observed when, in the opinion of the Employer, merit and ability are equal."

"SECTION 12. WORKING CONDITIONS . . .

"(f) Any employee whose earning capacity is limited because of age, physical or mental handicap, or other infirmity, may be employed in suitable work at a wage agreeable to the Employer, the employee and the Union.

"SECTION 14. CONTROVERSIES . . .

"(c) Immediately upon the signing of this Agreement there shall be established an Adjustment Board . . . It shall be the duty of the Adjustment Board to consider all complaints and disputes arising under the terms of this agreement, all questions of enforcement of this agreement and any appeals in connection with the discharge, demotion, or disqualification of any employee. . . .

"(g) Pending the decision of any question referred to the Adjustment Board, the conditions in effect at the time the dispute arose shall continue in effect pending the decisions of the Adjustment Board."

By agreement between the Union and Hale in this case, the matter was submitted to á sole arbitrator in lieu of the Adjustment Board described in the agreement. Both the arbitrator and the trial court found that the dispute over the "retirement" terminations of the five employes here involved is a dispute subject to arbitration under the terms and provisions of the collective bargaining agreement.

This conclusion finds support in the provisions of the agreement giving the employer the right to "discharge" any employe upon certain specified grounds (§ 3(a)), and to assign to "suitable work" an employe whose earning capacity is limited "because of age, physical or mental handicap, or other infirmity" (§ 12(f)); requiring that seniority among employes be observed when, in the employer's opinion, "merit and ability are equal" (§ 5(a)); giving the right to an employe who has been "discharged" for any of the reasons set forth in section 3, subdivision (a), "or for any other reason," to appeal through the Union to the Adjustment Board (here, the arbitrator) (§ 3(b)), and declaring that it "shall be the duty" of the Adjustment Board to consider "all complaints and disputes arising under the terms" of the agreement and "any appeals in connection with the *discharge, demotion, or disqualification*" (italics added) of any employe (§ 14(c)). Certainly the disputed termination of an employe on the ground of age, whether considered a "discharge" or a

"disqualification" by reason of such age or a violation of the provisions of subdivision (f) of section 12, *supra*, may properly be held to be an arbitrable "complaint" or "dispute arising under the terms" of the agreement. (See *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board* (1959), 52 Cal.2d 568, 589 [29] [343 P.2d 23].) *American Stores Co.* v. *Johnston* (1959), 171 F.Supp. 275; *United States Steel Corp.* v. *Nichols* (6th Cir., 1956), 229 Fed.2d 396, cert. den. 351 U.S. 950 [76 S.Ct. 846, 100 L.Ed. 1474]; and *Priest* v. *General Electric Co.,* (1958), 178 F.Supp. 514, relied upon by Hale, involved both contract provisions and factual backgrounds not present in the subject case, and so are not persuasive here.

Hale next contends that its "retirements" of three of the involved employes occurred during a period in which no contract existed between Hale and the Union, and that therefore the arbitrator exceeded his powers by rendering an award as to those three employes.

In November 1956 the Union and Hale had entered into a collective bargaining agreement which provided, in section 15 thereof, that "This Agreement shall be in full force and effect . . . to and including April 30, 1958, subject to written notice by either of the parties to the other, sixty (60) days prior to the expiration date, of a desire to *alter or amend* this agreement. A copy of the proposed changes in the conditions shall be given to the other party not later than thirty (30) days after the date of notification to reopen the agreement. In the event no such notices are given, this agreement shall be deemed to be renewed from year to year, subject to sixty (60) days' written notice prior to April 30 of each year in the future of a desire to *terminate or amend* this agreement." (Italics added.)

On February 26, 1958, the Union by letter notified Hale of its desire to alter and amend the agreement, and on March 25, 1958, the Union by letter further advised Hale of the specific changes in the agreement desired by the Union. Two of the employes involved in the subject case were terminated by Hale prior to the April 30, 1958, anniversary of the agreement, and the other three were terminated during the ten months immediately following such anniversary. Hale urges that the Union by its February 1958 notice of its desire to alter or amend the collective bargaining agreement caused the agreement to automatically terminate upon its April 30, 1958,

anniversary, and that therefore its provisions cannot be invoked on behalf of employes terminated thereafter.

Both the arbitrator and the trial court found that the collective bargaining agreement was extended beyond the April 30, 1958, date by the conduct of the parties and was in effect at the time of the retirement of all five of the employes. The arbitrator, in his decision and award, points out that "It is fairly common in the collective bargaining field to extend the terms of an old contract until a new one can be negotiated . . . Whether the parties did or did not extend their contract in a particular case is a question of fact and must be answered by recourse to the facts. . . .

"Since April 30, 1958, contractual wages, hours and working conditions have been observed . . . [although] even if the contract had not been extended, the Company [Hale] might well have preferred to maintain these conditions of employment. It is more significant . . . that the functioning of the Union inside the store and the day-to-day relationship between the parties have not been altered. Pursuant to Section 6 [of the collective bargaining agreement] the Employer has continued to inform the Union of the names of all employees and their classifications. Union officials have visited the premises at frequent intervals to observe working conditions as authorized by Section 4(a). The Union has informally discussed personnel problems with Company representatives. The Union has also filed formal grievances and the parties have held Adjustment Board meetings on various problems.

"According to Section 14(c) it is the duty of the Adjustment Board to consider complaints and disputes arising under the terms of the Agreement, and questions of enforcement of the Agreement. If there were no agreement then such complaints, disputes and questions could not exist; and it is difficult to see how there could be any work for the Adjustment Board.

"In fact this arbitration itself indicates that there must be a continuing contractual relationship between the parties. If there was no contract on April 30, 1958, there is no contract now [April 28, 1959, date of the award]. But consider the wording to the Submission Agreement. 'The parties agree that Arthur M. Ross shall be the seventh member of the Adjustment Board provided in the Collective Agreement. . . .' In the recitation of the issues there are three references to the Collective Bargaining Agreement. 'Pursuant to the Collective

Bargaining Agreement the parties will share equally the expenses of the arbitration.'

"In the face of this wording how can it be claimed that there is no collective agreement? Nowhere in the Submission does the Company reserve any such claim . . .

". . . Undoubtedly Hale Brothers had a *right* to operate without contractual restraints after April 30, 1958. What we have been discussing is whether the Company chose to exercise that right, or whether instead it joined with the Union in extending the provisions of the Contract in accordance with the practice in previous years. This is not a pure question of law, but a question of fact requiring the aid of extrinsic evidence. The extrinsic evidence makes it plain that the contract was extended."

The conclusion of the arbitrator and of the trial court on this point is adequately supported by the facts set out in the above quotation from the written decision of the arbitrator. Refraining from giving notice of desire to amend the agreement is not by the provisions of section 15 made essential to extension of its term. Further, the use by the parties in the first sentence of section 15 of the language "alter or amend" the agreement, and of the expression "terminate or amend" in the last sentence of the section, likewise indicates that the giving of a mere notice of a desire to "alter or amend," without specifically declaring a desire to "terminate," was not intended to necessarily and automatically effectuate such a termination upon the April 30 anniversary of the agreement. The notice given by the Union here was of its desire to "alter and amend," rather than to "terminate." Thus, *Flores* v. *Barman* (1955), 130 Cal.App.2d 282, 284 [279 P.2d 81], in which the employer in accordance with its express contractual rights gave the union notice that it intended to *terminate* the contract, is of no assistance to Hale. The court there correctly held that under such circumstances the arbitrator erred in construing the contract against its express language to conclude that the employer could not unilaterally terminate the agreement. It may also be noted that in Flores, as in the subject case, the contract gave to each party the right to *either* terminate *or* give notice of desire to modify; there, the notice actually given was one of termination, while in the case at bench, as already noted, it was merely of a desire to alter and amend. It thus is plain that the arbitrator here did not exceed his powers by making an award in favor of the three

employes whose employment was terminated by Hale after April 30, 1958.

What we have said on this point applies equally to that portion of the award granting to the two employes terminated prior to April 30, 1958, back pay extending beyond that date.

The judgment confirming the award is affirmed.

Gibson, C. J., Traynor, J., Peters, J., White, J., Dooling, J., and Bray, J. pro tem.,* concurred.

Appellant's petition for a rehearing was denied May 31, 1961. Bray, J. pro tem.,* participated therein in place of McComb, J., who deemed himself disqualified.

*Assigned by Chairman of Judicial Council.