[Civ. No. 1139. Fifth Dist. Apr. 28, 1970.]

GRACE MONTALVO et al., Plaintiffs and Appellants, v.
GEORGE ZAMORA, Defendant and Respondent.

COUNSEL

J. V. Henry, Martin M. Spiegel and Dennis R. Powell for Plaintiffs and Appellants.

Bartow & Christiansen and Axel E. Christiansen for Defendant and Respondent.

OPINION

**COAKLEY, J.**—This appeal is from a judgment of dismissal following the sustaining, without leave to amend, of a general demurrer to the amended complaint, which pleads four causes of action. The order and memorandum sustaining the general demurrer recite that the demurrer is sustained upon

the grounds that (1) no cause of action was stated, and (2) the court had no jurisdiction of the subject matter. The reason for lack of subject matter jurisdiction was not indicated. We assume, however, that it was upon the ground set forth in the defendant's demurrer and points and authorities, namely, that the amount sued for is below the jurisdictional amount of the superior court. The appeal is from the judgment of dismissal entered following the sustaining of the demurrer to the first, third and fourth causes of action. Plaintiffs have abandoned their second cause of action.

The first cause of action of the amended complaint alleges that on April 27, 1968, the defendant employed plaintiffs, Grace Montalvo and Richard Montalvo, Jr., who are husband and wife, as agricultural workers for an indefinite period at a rate of $1.40 per hour; that on April 29, defendant employed Richard Montalvo, Sr., in a similar capacity at the same rate and for an indefinite period; that Richard Montalvo, Sr., had worked for the defendant, seasonally, since 1966, and Grace and Richard, Jr., since 1967; that it was the practice of the plaintiffs "to obtain employment and negotiate the terms and conditions thereof on a joint and collective basis"; that prior to April 30, Richard, Jr., learned that the Industrial Welfare Commission of California had adopted an order requiring employers to pay female agricultural laborers $1.65 per hour; that on April 30, Richard, Jr., "consulted his attorney regarding his wife's right to . . . [$1.65 per hour] from defendant, and . . . [regarding] certain deductions which defendant was making from plaintiffs' paychecks"; that "[s]aid attorney agreed to take whatever steps were necessary to recover money wrongfully withheld from plaintiffs"; that on April 30, plaintiffs "designated said attorney to act as representative of their choosing to negotiate the terms and conditions of their employment"; that "[a]cting as the authorized representative of the plaintiffs" their attorney wrote to defendant on May 1; that defendant received the letter on May 3, and on that day discharged the plaintiffs from his employ; that the defendant discharged the plaintiffs solely because of his receipt of the letter mailed to him by the plaintiffs' attorney; that the discharge of plaintiffs was done with malice and with intent to injure the plaintiffs, and that its purpose and effect was to "interfere with, restrain, and coerce the plaintiffs in the exercise of their right to designate representatives of their own choosing to negotiate the terms and conditions of their employment"; that, as a result of their discharge, plaintiffs were unemployed, suffering wage losses as follows: Richard, Sr., and Richard, Jr., $8.40 each, and Grace $36.30.

The letter of May 1, 1968, which was incorporated in the amended complaint by reference, called attention to the Industrial Welfare Commission order fixing $1.65 per hour as the minimum wage payable to female agricultural workers, and it advised the defendant that plaintiff,

Grace Montalvo, had a right of action against him for the difference between $1.65 per hour and the amount she actually was paid. The letter stated that "[w]e are prepared to enforce this claim . . . [and to] take all necessary legal steps to prevent your firing Mrs. Montalvo because her husband spoke to us." In addition to the actual wage loss, the first cause of action seeks punitive damages in the sum of $1,000 in favor of each of the plaintiffs. It is further alleged that an actual controversy exists between the plaintiffs and the defendant regarding their respective rights and duties, more particularly, that defendant may not discriminate against plaintiffs, i.e., discharge them for having exercised their rights to self-organization and the designation of a representative of their own choosing to negotiate the terms and conditions of their employment.

On appeal from a judgment of dismissal following the sustaining of a demurrer, the allegations of the complaint must be regarded as true (*Marin* v. *Jacuzzi*, 224 Cal.App.2d 549, 552 [36 Cal.Rptr. 880]). With that premise, the issue raised by the first cause of action is whether the defendant violated any law in allegedly discharging the plaintiffs because they designated an attorney to represent them for the purpose of negotiating terms and conditions of employment with the defendant.

Though not pleaded in *haec verba*, or by express statutory reference, it is clear from their memorandum in opposition to the demurrer, and from their briefs, that for their first cause of action plaintiffs rely upon Labor Code section 923, which provides: "In the interpretation and application of this chapter, the public policy of this State is declared as follows:

"Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

The section is a declaration of public policy. (See its preamble; see also *Wetherton* v. *Growers Farm Labor Assn.*, 275 Cal.App.2d 168 [79 Cal.Rptr.

543]; *Glenn* v. *Clearman's Golden Cock Inn, Inc.,* 192 Cal.App.2d 793, 796 [13 Cal.Rptr. 769]; *Elsis* v. *Evans,* 157 Cal.App.2d 399, 409 [321 P.2d 514].)

"Violation of a statute embodying a public policy is generally actionable even though no specific remedy is provided in the statute; any injured member of the public for whose benefit the statute was enacted may bring an action." *(Wetherton* v. *Growers Farm Labor Assn., supra,* 275 Cal.App.2d 168, 174; see also *Texas & New Orleans R.R. Co.* v. *Brotherhood of Ry. & S.S. Clerks,* 281 U.S. 548 [74 L.Ed. 1034, 50 S.Ct. 427]; *Petermann* v. *International Brotherhood of Teamsters,* 174 Cal.App.2d 184 [344 P.2d 25]; *Kouff* v. *Bethlehem-Alameda Shipyard, Inc.,* 90 Cal.App.2d 322 [202 P.2d 1059].) Thus, a violation of Labor Code section 923 has been held to provide the necessary basis for civil liability by way of damages *(Wetherton* v. *Growers Farm Labor Assn., supra; Glenn* v. *Clearman's Golden Cock Inn, Inc., supra).* And, in *Texas & New Orleans R.R. Co.* v. *Brotherhood of Ry. & S.S. Clerks, supra,* injunctive relief was held to be an appropriate remedy against a railroad company's interference with the right of its employees to self-organize and to designate representatives of their own choosing to represent them in matters relating to their employment. In that case the Railway Labor Act provided for self-organization and collective action by employees free from interference or coercion on the part of the employer, but it did not provide for any penalty. The court there said, "The absence of penalty is not controlling. . . . [T]he statutory requirements are susceptible of enforcement by proceedings appropriate to each . . . The right is created and the remedy exists." (281 U.S. 548 at pp. 569-570 [74 L.Ed. 1034, pp. 1045-1046].)

In *Elsis* v. *Evans, supra,* 157 Cal.App.2d 399, 409, the court construed Labor Code section 923, and, in reliance upon *Texas & New Orleans R.R. Co.* v. *Brotherhood of Ry. & S.S. Clerks, supra,* observed that injunctive relief was appropriate where an employer interferes with the rights of his employees guaranteed by Labor Code section 923. The court held, however, that the section was not applicable under the facts of the case because exclusive jurisdiction of the dispute was vested in the National Labor Relations Board.

Plaintiffs acknowledge that they have found no reported case dealing with the designation of an attorney, as distinguished from a labor organization or other form of employee association, for the purpose of negotiating the terms and conditions of employment. Nor has our independent research disclosed any authority helpful in resolving the issue.

■ Clearly, the declared purpose of Labor Code section 923 is to guarantee to individual employees full freedom of self-organization and of association with others "for the purpose of *collective* bargaining or other *mutual* aid or protection," free from interference or coercion by their employers. (Italics added.) (*Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88,* 53 Cal.2d 455, 470 [2 Cal.Rptr. 470, 349 P.2d 76]; *Levy* v. *Superior Court,* 15 Cal.2d 692, 704 [104 P.2d 770, 129 A.L.R. 956].)

Not so clear, however, is whether the individual employee has a correlative right to designate an attorney or other individual to act as his representative to negotiate terms and conditions of employment, independent of all other employees of the same employer. On the one hand, attempts to bargain on behalf of a single employee, or of a few, only, of all employees, or of all employees within a particular category of employees, seem to us to be the antithesis of the strength in numbers philosophy which the statute seeks to encourage and to protect. On the other hand, the statute appears also to emphasize that the individual shall have full freedom of choice in the designation of his representative to negotiate the terms and conditions of his employment. We believe it to be within the intent and scope of the statute, by implication, though not expressly declared, that the individual employee has the right to designate an attorney or other individual to represent him in negotiating terms and conditions of his employment, and that his discharge for so doing constitutes a violation of Labor Code section 923.

This is not to say, however, that an employer has any legal obligation to enter into negotiations with the attorney or individual so designated. It has been held that an employer has no "affirmative duty to bargain," i.e., he does not violate Labor Code section 923 by refusing to negotiate with a labor organization designated for that purpose by his employees. (*Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88, supra,* 53 Cal.2d 455, 470.) By the same token, he does not violate the statute by refusing to negotiate with an attorney or other representative of the individual employee. No penalty, civil or criminal, attaches for refusing to negotiate. The violation occurs, not in refusing to negotiate, but in discriminating against an employee or employees for exercising his or her rights of self-organization and designation of a representative for the purposes stated in the statute.

■ We hold, therefore, that the plaintiffs state a cause of action for civil relief when they allege that they were discharged because they designated an attorney to represent them for the purpose of negotiating terms and conditions of employment. The nature of the relief, i.e., whether damages or injunction or both, must await the trial of the action.

The third cause of action incorporates, by reference, relevant paragraphs of the first cause of action. It alleges that "[t]he purpose and effect of defendant's conduct was to discharge and discriminate against plaintiffs because plaintiffs were about to testify or because defendant believed that they were about to testify in a proceeding or investigation under Division 2, Part 4, Chapter 1 of the California Labor Code." It then further alleges that plaintiffs may not be discharged for either of those reasons.

The fourth cause of action is a restatement of the third cause of action, alleging, in somewhat different words, that the defendant committed a tort against plaintiffs when he discharged them to prevent the plaintiff, Grace Montalvo, from exercising her rights under the California Minimum Wage Law for Women and Minors. (Lab. Code, div. 2, part 4, ch. 1.) Accordingly, we consider the third and fourth causes of action jointly herein.

█ The Minimum Wage Law for Women and Minors establishes, as public policy of this state, the protection of the health and welfare of women and children. The act (Lab. Code, § 1196) provides that: "Any employer who discharges, threatens to discharge, or in any other manner discriminates against any employee because the employee has testified or is about to testify, or because the employer believes that the employee will testify in any investigation or proceedings relative to the enforcement of this chapter, is guilty of a misdemeanor."

As established by the authorities cited in our consideration of plaintiffs' first cause of action, *supra,* violations of public policy statutes, including those dealing with certain aspects of employer-employee relations, have been declared justiciable in civil actions. This is true notwithstanding that criminal sanctions are provided. (Witkin, Summary of Cal. Law (1969 Supp.), Agency and Employment, § 94A, pp. 180-181; see also *Petermann* v. *International Brotherhood of Teamsters, supra,* 174 Cal.App.2d 184, 189; *Kouff* v. *Bethlehem-Alameda Shipyard, supra,* 90 Cal.App.2d 322.)

We hold, therefor, that the third and fourth causes of action of the amended complaint sufficiently plead a case for civil relief under the Minimum Wage Law for Women and Minors.

█ We next consider the trial court's determination that it lacks jurisdiction of the subject matter. This is incorrect. █ The complaint seeks a declaration of the rights of the parties under a statute declaring the public policy of this state, and an alleged violation thereof by the defendant. An action for declaratory relief is an appropriate proceeding for determining the applicability of such a statute. (*Walker* v. *County of Los Angeles,* 55 Cal.2d 626, 637 [12 Cal.Rptr. 671]; see *Petermann* v. *Inter-*

*national Brotherhood of Teamsters, supra,* 174 Cal.App.2d 184.) The superior court has jurisdiction of actions in declaratory relief. (Code Civ. Proc., § 1060.)

██ True, the wage loss ($8.40 for each of the male plaintiffs and $36.30 for plaintiff, Grace Montalvo) is below the jurisdictional amount of the Superior Court in Madera County, whose jurisdiction starts at amounts in excess of $1,000. (Code Civ. Proc., § 112; see *Whittaker* v. *Superior Court,* 68 Cal.2d 357, 362 [66 Cal.Rptr. 710, 438 P.2d 358].) However, the complaint also seeks exemplary damages of $1,000 for each plaintiff upon the ground that the plaintiffs' discharge was done through malice. That is a triable issue, the amount of such exemplary damages, if any, to be determined, not on the pleadings, but on the facts developed at the trial. (*Muller* v. *Reagh,* 150 Cal.App.2d 99, 102 [309 P.2d 826].)

██ Further, the complaint seeks an injunction to prevent discrimination against, and the discharge of, plaintiffs, contrary to the public policy of this state as set forth in the Labor Code. Injunctive relief and damages are appropriate remedies for such violations. (*Williams* v. *International etc. of Boilermakers,* 27 Cal.2d 586 [165 P.2d 903]; *James* v. *Marinship Corp.,* 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900]; *Wetherton* v. *Growers Farm Labor Assn., supra,* 275 Cal.App.2d 168; *Glenn* v. *Clearman's Golden Cock Inn, supra,* 192 Cal.App.2d 793.)

The judgment is reversed.

Stone, P. J., and Gargano, J., concurred.