Sherman C. IVY, Appellant,

v.

ARMY TIMES PUBLISHING COMPANY and Joseph Varga, Appellees.

No. 79-278.

District of Columbia Court of Appeals.

March 10, 1981.

Before NEWMAN, Chief Judge, KELLY, KERN, NEBEKER,* HARRIS,* MACK *

---

and FERREN, Associate Judges, and GALLAGHER, Associate Judge Retired.**

ORDER

PER CURIAM.

This cause came on for consideration on appellant's petition for rehearing en banc. It appearing that a majority of the court has not voted in favor of granting the petition, it is

ORDERED that appellant's petition for rehearing en banc is hereby denied.

FERREN, Associate Judge, with whom NEWMAN, Chief Judge and KELLY, Associate Judge, join, dissenting:

This case presents the question whether an at will employee states an actionable claim against an employer who requires him to testify in an administrative proceeding brought against that employer, and then fires him in retaliation for testifying truthfully against the employer's interests. In an unpublished memorandum opinion and judgment, a division of this Court held that the employee did not state a claim. I dissent from the denial of this petition because it presents a question of "exceptional importance." D.C.App. R. 40(c). It requires en banc consideration, for the division of this court presumably considered itself bound * by previous decisions holding that any party to an employment contract of indefinite duration may terminate it for any reason. *See Taylor v. Greenway Restaurant, Inc.*, D.C.Mun.App., 173 A.2d 211 (1961); *Pfeffer v. Ernst*, D.C.Mun.App., 82 A.2d 763, 764 (1951).

For years it has been the law of this jurisdiction that a landlord may not retaliate by evicting a tenant at will who reports housing code violations in the tenant's

---

* Denotes merits division.

** Associate Judge Gallagher was an active member of the court on the date the court voted to deny the petition but retired before publication.

* *See M.A.P. v. Ryan*, D.C.App., 285 A.2d 310, 312 (1971).

apartment. *Edwards v. Habib*, 130 U.S. App.D.C. 126, 397 F.2d 687 (1968), *cert. denied*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969). It is at least as important for this court to consider the legality of retaliation by firing an at will employee who testifies truthfully, under compulsion, against his or her employer.

Petitioner's counsel has filed a forceful petition, marshalling a substantial body of authority for our consideration. I set it forth below as the best way of demonstrating the importance of the issue the en banc court declines to consider.

## PETITION FOR REHEARING EN BANC

The question presented by this petition is whether the appellant, Sherman C. Ivy, has stated a viable cause of action sounding either in tort, or alternatively in contract, against his former employer, appellee Army Times Publishing Co., where Army Times discharged Mr. Ivy from his position of at will employment solely because Mr. Ivy testified truthfully, albeit adversely to Army Times' interests in a proceeding before the District of Columbia Wage and Hour Board. On December 4, 1980, a panel of this Court answered that question in the negative. Because the result reached by the panel is clearly contrary to the modern trend of the law, and because the practical effect of the panel's decision is to encourage the commission of perjury before administrative agencies of the District of Columbia, we submit that this case raises a question of exceptional importance within the meaning of D.C. App. Rule 40(c) which should be resolved by the Court *en banc.*

The panel, in its *Memorandum Opinion and Judgment* at p. 1 (hereinafter cited as "Panel Opinion"), summarized the underlying facts as follows:

> The facts pertinent to this case go back to October 1976, when appellant testified at a hearing of the Wage and Hour Board of the District of Columbia. The hearing concerning a complaint brought against

appellee Army Times by a former employee who had been supervised by appellant. Prior to his testimony, which was required by appellee Army Times, appellant warned the company's attorney that his testimony would support the complaint against Army Times. In response, the attorney told appellant to testify "the way you think is right."

Following his testimony, appellant claims to have been subjected to frequent verbal attacks, both over the telephone and in person, · by appellee Varga, his supervisor at Army Times, and by Henry Belber, the Executive Vice-President of Army Times. In November 1976, appellee Varga allegedly called appellant a "fucking idiot" and "stupid" during the annual meeting of the Army Times sales staff. Leave requested by appellant was cancelled precipitously several times after the Wage and Hour Board Hearing. According to appellant, this abuse caused him to lose 30 pounds and to start taking tranquilizers. Appellant was dismissed by appellee Varga in March 1977. Appellant contends that this dismissal and the abuse to which he was subjected were in the nature of retaliation by appellees for his testimony against Army Times at the Wage and Hour Board hearing.

Based upon those facts, Mr. Ivy filed suit in the Superior Court of the District of Columbia; his complaint alleged, *inter alia*, that because his dismissal was in contravention of the District of Columbia's statutorily declared public policy in favor of truthful testimony in quasi-judicial administrative proceedings, Army Times' conduct gave rise to a cause of action for wrongful discharge sounding in tort or, alternatively, in contract.[1] For purposes of a summary judgment motion (which was granted, and thus perforce for purposes of this appeal), Army Times conceded that it dismissed Mr. Ivy solely in retaliation for his testimony before the Wage and Hour Board. In December, 1980, the panel affirmed the trial court's

---

1. Mr. Ivy's complaint also alleged that Army Times' and Mr. Varga's actions were defamatory and that they constituted intentional inflic-

tion of emotional distress. Both claims were rejected by the panel, and neither claim is renewed in this petition.

order granting summary judgment to appellees on the ground that Mr. Ivy's complaint did "not state a claim upon which relief could be granted...." [2] *Panel Opinion*, p. 3.

From the outset, Mr. Ivy has acknowledged that the general rule in the District of Columbia is that in the absence of an employment contract for a fixed period, an employee may be terminated at will by the employer for any reason or indeed, for no reason at all. See, e. g., *Taylor v. Greenway Restaurant, Inc.*, 173 A.2d 211 (D.C. Mun.App. 1961). Mr. Ivy has contended, however, that the time has come for the District of Columbia to modify that rule by agreeing with the persuasive body of scholarly [3] and judicial opinion to the effect that even terminable at will employees may resort to the courts for a remedy when their dismissals are in violation of some statutorily declared public policy.[4]

The landmark case on point is *Petermann v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959). In *Petermann*, the employer instructed an at will employee to testify falsely at a legislative hearing and then fired the employee when he refused to commit perjury; the court held that the employer's conduct abridged the state's declared public policy of encouraging truthful and complete testimony and therefore constituted an abuse of the employer's contractual rights.[5] The principles enunciated in *Petermann* were

---

**2.** Because both the trial court and the panel concluded that Mr. Ivy's wrongful discharge theory failed to state a claim upon which relief could be granted, Mr. Ivy's well-pleaded factual allegations in support of that claim must be taken as true for purposes of this petition, even though the claim was dismissed pursuant to a motion for summary judgment instead of a motion under Super.Ct.Civ.R. 12(b)(6). See, e. g., *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

**3.** The seminal article on the subject is Blades, *Employment At Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power*, 67 Colum.L.Rev. 1404 (1967). The most recent scholarly examination of the issue is Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty To Terminate Only In Good Faith*, 93 Harv.L.Rev. 1816 (1980) (hereinafter cited as "*Protecting At Will Employees*"). See also Peck, *Unjust Discharges From Employment: A Necessary Change in the Law*, 40 Ohio St.L.J. 1 (1979). Comment, *Kelsay v. Motorola, Inc.: Tort Action for Retaliatory Discharge Upon Filing Workmen's Compensation Claim*, 12 John Marshall J.Prac. & Proc. 659 (1979); Note, *Non-Statutory Cause of Action for an Employer's Termination of an "At Will" Employment Relationship: A Possible Solution to the Economic Imbalance in the Employer-Employee Relationship*, 24 N.Y.L.Sch.L. Rev. 743 (1979); Comment, *Protecting the Private Sector At Will Employer Who "Blows the Whistle": A Cause of Action Based Upon Determinants of Public Policy*, 1977 Wisc.L.Rev. 777; Note, *A Common Law Action for the Abusively Discharged Employee*, 26 Hastings L.J. 1435 (1975); Note, *Remedy for the Discharge of Professional Employees Who Refuse to Perform Unethical or Illegal Acts: A Proposal in Aid of Professional Ethics*, 28 Vand.L.Rev. 28 (1975); Note, *Implied Contract Rights to Job*

*Security*, 26 Stan.L.Rev. 335 (1974); Weyand, *Present Status of Individual Employee Rights*, N.Y.U.22D Annual Conference on Labor 171 (1970); *cf.* Summers, *Individual Protection Against Unjust Dismissal: Time for a Statute*, 62 Va.L.Rev. 481 (1976). See also the various materials collected in A. Westin & S. Salisbury, Eds., Individual Rights in the Corporation: A Reader on Employee Rights (1980).

**4.** The theory, of course, is conceptually not unlike others which have long been accepted by this Court. See, e. g., *Dolphin v. Park Monroe Associates*, 353 A.2d 314 (D.C.App.1975), following *Edwards v. Habib*, 130 U.S.App.D.C. 126, 397 F.2d 687, *cert. denied*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969) (while landlord may evict a tenant at will for any legal reason or for no reason at all, he may not evict for reasons which violate statutorily declared public policy).

**5.** In the present case, Mr. Ivy argued to the panel that if this case should eventually go to trial, a jury could reasonably infer that, as in *Petermann*, Army Times meant to suggest to Mr. Ivy that the company expected his testimony to support its position before the Wage and Hour Board, regardless of Mr. Ivy's understanding of the truth of the matters he was to testify about. Army Times, of course, vigorously disputed that argument. In any event, the point need not be addressed in order to resolve the question presented by this petition, for whether Mr. Ivy was fired for refusing to commit perjury or whether he was fired for telling the truth is, in our view, a distinction without a difference for purposes of determining whether he has stated a claim upon which relief can be granted. See, *Petermann v. International Brotherhood of Teamsters, supra*.

recently reaffirmed in *Tamney v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980), where the court made it clear that a tort as well as a contract remedy is available to the abusively discharged employee: "[w]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Id.*, 164 Cal. Rptr. at 840. For other cases holding that a tort action is available to an at will employee whose dismissal violates an important public policy, see, e. g., *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980); *Lally v. Copygraphics*, 173 N.J. Super. 162, 413 A.2d 960 (App.Div.1980); *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir. 1979); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1979); *Harless v. First National Bank*, 246 S.E.2d 270 (W.Va.1978); *Brown v. Transcom Lines*, 284 Or. 597, 588 P.2d 1087 (1978); *Trombelta v. Detroit, Toledo & Ironton R.R. Co.*, 81 Mich.App. 489, 265 N.W.2d 385 (1978); *Sventko v. Kroger*, 69 Mich.App. 644, 245 N.W.2d 151 (1976); *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975); *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973); *Montalvo v. Zamora*, 7 Cal.App.3d 74, 86 Cal.Rptr. 401 (1970); *Glenn v. Clearman's Golden Cock Inn*, 192 Cal.App.2d 793, 13 Cal.Rptr. 760 (1961); *McNulty v. Borden, Inc.*, 474 F.Supp. 1111 (E.D.Pa.1979); *O'Sullivan v. Mallon*, 160 N.J.Super. 416, 390 A.2d 149 (1978); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978). Other courts have held that an action for

breach of contract is available to an at will employee who is dismissed for bad faith reasons which violate a declared public policy. See, e. g., *Fortune v. National Cash Register Co.*, 364 N.E.2d 1251 (Mass.1977); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974). See also *Pstragowski v. Metropolitan Life Insurance Co.*, 553 F.2d 1 (1st Cir. 1977); *Foley v. Community Oil Co.*, 64 F.R.D. 561 (D.N.H.1974); *Zimmer v. Wells Management Corp.*, 348 F.Supp. 540 (S.D.N.Y.1972).[6]

Nevertheless, in the face of that substantial body of scholarly commentary and decisional law [7] supporting the recognition of either a tort or contract cause of action for an at will employee who is discharged in contravention of some declared public policy, the panel in this case saw fit to dispose of Mr. Ivy's wrongful discharge claim in a single terse paragraph:

Appellant seeks to recover damages arising from his dismissal which he alleges was in retaliation for testimony against his employer at the Wage and Hour Board hearing. While some jurisdictions have recognized a cause of action for wrongful discharge in tort, *see, e. g., Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973); *Petermann v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959), and in contrast [sic], *see, e. g., Fortune v. National Cash Register Co.*, 364 N.E.2d 1251 (Mass.1977); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974), this jurisdiction allows an employment contract of indefinite duration to be terminated for any reason at the wish of either party. *Taylor v. Greenway*

---

**6.** Still other courts have found an employer liable for intentional infliction of emotional distress in cases of wrongful discharge. See, e. g., *Harless v. First National Bank, supra; Contreras v. Crown Zellerbach Corp.*, 88 Wash.2d 735, 565 P.2d 1173 (1977); *Agis v. Howard Johnson & Co.*, 355 N.E.2d 315 (Mass.1976); *Alcorn v. Anbro Engineering Co.*, 2 Cal.3d 493, 86 Cal. Rptr. 88, 468 P.2d 216 (1970). However, as a practical matter, that theory of employer liability is largely foreclosed in this jurisdiction by this Court's decision in *Waldon v. Covington*, 415 A.2d 1070 (D.C.App.1980); *see also* the *Panel Opinion* in this case, rejecting such a

cause of action on the present facts. Consequently, it is all the more important for this Court to undertake a thorough and informed analysis of the wrongful discharge theory as an independent ground of liability.

**7.** So far as our research has revealed, of the various jurisdictions which have considered the question presented by this case in the past decade, only two—Alabama and Florida—have declined to recognize the wrongful discharge cause of action. With the *Panel Opinion* here, the District of Columbia becomes the third.

*Restaurant, Inc.,* D.C.Mun.App., 173 A.2d 211 (1961); *Pfeffer v. Ernst,* D.C.Mun. App., 82 A.2d 763, 764 (1951). There is no evidence that appellant's oral contract was for a fixed period; it could therefore have been terminated at will by appellees without incurring liability. Even if appellant's dismissal was in retaliation for his testimony before the Wage and Hour Board, his allegation of wrongful discharge does not state a claim upon which relief could be granted in any event. Consequently, the trial court did not err in granting appellees' motion for summary judgment on the issue of wrongful discharge. [*Panel Opinion,* p. 3.]

Those five short sentences constituted the sum and total of the panel's discussion of Mr. Ivy's wrongful discharge claim.

The most immediately noticeable feature of the panel's summary rejection of Mr. Ivy's wrongful discharge theory is that the *Panel Opinion* merely announced a result, unaccompanied by any supporting reasons. To say, as did the panel, that "[e]ven if appellant's dismissal was in retaliation for his testimony before the Wage and Hour Board, his allegation of wrongful discharge does not state a claim upon which relief could be granted in any event," is simply to state a bald conclusion which in no way explains *why* Mr. Ivy's complaint did not state a claim upon which relief could be granted.[8]

\*　\*　\*　\*　\*　\*

... It may be ... that the panel was persuaded by appellees' argument that any necessary modification of the terminable at will rule should be achieved by legislative enactment instead of by judicial decision. If the panel did indeed agree with that argument, we think that it was mistaken, largely for the reasons succinctly stated in *Protecting At Will Employees, supra* at 1838 (footnotes omitted):

Such public law solutions need not be the exclusive remedy for at will employees. Courts possess the legitimate heritage of common law innovation that develops new principles to accommodate changing values, and are therefore an appropriate forum for the creation of job security rights. Because courts have considerable experience with similar employment relations problems, they possess sufficient expertise to resolve wrongful discharge disputes. Thus, courts need not await legislative initiative to effect doctrinal change in the employment at will area. Courts themselves created the at will rule; it is therefore entirely appropriate that they now take the lead in modifying it. The reign of "caveat emptor" was brought to an end through judicial innovation in the development of products liability law. The same kind of innovation may be the most helpful way to modify the rule of "let the employee beware." [9]

8. [Omitted]

9. See also *Sventko v. Kroger, supra,* where the court, in recognizing a tort cause of action of employees who are wrongfully discharged in retaliation for filing workmen's compensation claims, rejected the argument that the judiciary should not recognize such a cause of action because the legislature could have, but did not, provide for such a remedy in the workmen's compensation statute itself:

The legislature had seen fit to make it a crime for an employer to consistently discharge employees before they qualify under the act in order to evade the provisions of the act. [Citation to statute.] The Legislature has *not* made retaliatory discharges of the type alleged in this case a subject of any criminal sanction. This is certainly no indication on the part of the Legislature that the latter conduct is consistent with public policy. [*Id.,* 245 N.W.2d at 154.]

Accordingly, the *Sventko* court concluded:

Discouraging the fulfillment of this legislative policy [i. e., the policy underlying the workmen's compensation statute] by use of the most powerful weapon at the disposal of the employer, termination of employment, is obviously against the public policy of our state. \* \* \* This Court cannot tolerate such conduct. [*Id.,* at 153–154.]

Similarly here, Mr. Ivy asks this Court to recognize a cause of action solely for those employees who are discharged in contravention of some statutorily declared public policy; obviously, such a remedy would be available only to those employees whose dismissals violate some public policy already created by the legislature.

Or perhaps the panel was concerned about the possibility that acceptance of Mr. Ivy's wrongful discharge claim would open the proverbial "floodgates" and inundate the courts of the District of Columbia with similar suits. Again, the short answer to that misplaced concern is stated in *Protecting At Will Employees, supra* at 1842 (footnotes omitted):

> One objection is that judicial [recognition of the wrongful discharge cause of action] will lead to a flood of litigation that will crush already overburdened dockets. Yet it is not clear that this will result from increased judicial scrutiny of discharges. First, expanded liability may deter future abusive or retaliatory discharges, thus limiting the number of potential claims. Second, the development of clear standards of what constitutes an unjust discharge will encourage out-of-court settlement of the claims that do arise. In any event, fear of a small increase in litigation is hardly a valid reason for denying relief to wrongfully discharge employees.[10]

But whatever the actual reasons for the panel's holding, we think it patent that the importance of the issue requires a more extensive and thoughtful analysis than that which appears in the *Panel Opinion....*

MACK, J., while not concurring fully in the foregoing statement, would grant rehearing en banc.

---

10. To which we would only add that we simply do not believe that any large number of District of Columbia employers fire their employees for reasons which violate statutorily declared public policy.