The INTERNATIONAL CITY MANAGE-
MENT ASSOCIATION RETIREMENT
CORPORATION, a Delaware Corpora-
tion, Plaintiff,

v.

Harold C. WATKINS, Defendant.

Civ. A. No. 89–0157.

United States District Court,
District of Columbia.

Oct. 17, 1989.

Geoffrey Judd Vitt, C. Sanders McNew,
Caplin & Drysdale, Washington, D.C., for
plaintiff.

Henry L. Marsh, III, David Eugene
Cheek, Hill, Tucker & Marsh, Richmond,
Va., for defendant.

**2**

## MEMORANDUM OPINION

SPORKIN, District Judge.

### I. BACKGROUND

The matter before this Court is a civil diversity action between Plaintiff–Defendant, The International City Management Association Retirement Corporation ("ICMA–RC"), and Defendant–Plaintiff, Harold C. Watkins. ICMA–RC is a corporation whose primary business is the provision of administrative services for retirement plans established and maintained by local governments for the benefit of their employees. From June 1981, until his discharge on April 30, 1987, Mr. Watkins was employed by ICMA–RC in its Washington office as a corporate vice president.

ICMA–RC initiated this action against Watkins alleging: wrongful conversion of ICMA–RC property, misuse of ICMA–RC client lists and trade secrets, tortious interference with the contractual and business relations between ICMA–RC and its clients, a breach by Watkins of the fiduciary duties he owed to ICMA–RC, and the breach of a consulting contract between ICMA–RC and Watkins. In his Amended Counterclaim, Watkins has asserted four grounds for recovery against ICMA–RC: (1) breach of a consulting contract between Watkins and ICMA–RC; (2) wrongful discharge and damage to professional reputation; (3) a violation of 42 U.S.C. § 1981; and (4) intentional interference with business and contractual relations.

ICMA–RC moves to dismiss the second, third, and fourth counts of the Amended Counterclaim and the Court is prepared to rule on the motion. To the extent that this Court considers matters outside the pleadings,[1] ICMA–RC's Motion to Dismiss will be treated as a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure pursuant to Rule 12(b)(6).

### II. DISCUSSION

■ Watkins, in his opposition to this motion to dismiss, asserts that there is a choice of law issue involved in this matter.[2] However, it is clear that the common law claims asserted by Watkins are controlled by the local law of the District of Columbia. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Although ICMA–RC is a Delaware corporation, it has its principal place of business in the District of Columbia. Amended Counterclaim ¶ 3. In addition, Watkins was employed at ICMA–RC's corporate office and all of the events that form the basis of his claims occurred within the District of Columbia. Amended Counterclaim ¶ 16. The Court finds Watkins's arguments in favor of the application of another jurisdiction's law to be unpersuasive. It is clear to the court that the District of Columbia has an overriding interest in regulating the relationships that exist between employers, who operate within the District of Columbia, and their employees.

#### A. *Wrongful Discharge*

■ Watkins alleges that his dismissal by ICMA–RC constitutes a breach of the corporation's employer-employee contractual relations. Amended Counterclaim, ¶ 39. However, it is well-settled law in the District of Columbia that an employment contract is terminable at will unless it is for a specified term. *Buttell v. American Podiatric Medical Assoc.*, 700 F.Supp. 592, 600 (D.D.C.1988); *Newman v. Legal Services Corp.*, 628 F.Supp. 535, 538 (D.D.C. 1986). Employment contracts of an indefinite duration can be terminated at will by either employer or employee with no ensuing liability on the part of either. *Hall v. Ford*, 856 F.2d 255, 267 (D.C.Cir.1988); *Keller v. Assoc. of American Medical Colleges*, 644 F.Supp. 459, 465 (D.D.C.1985), *aff'd*, 802 F.2d 1483 (D.C.Cir.1986). Thus, an at-will employee may be "terminated for

---

1. In particular, the Court has reviewed the affidavits submitted by both parties and the transcript of the hearing on ICMA–RC's Motion for Temporary Restraining Order conducted by this Court on February 3, 1989.

2. Watkins asserts that choice of law rules would allow for the application of Delaware or Virginia state law. Opp.Memo. to Motion to Dismiss, p. 11–12.

any reason—right or wrong—or for no reason at all." *Newman,* 628 F.Supp. at 538; *see also Taylor v. Greenway Restaurant, Inc.,* 173 A.2d 211 (D.C.1961).

In the instant case, Watkins has acknowledged in his Amended Counterclaim that he was hired by ICMA–RC for an "indefinite term." Amended Counterclaim, ¶ 17. Given the District of Columbia's employment at-will doctrine, it is therefore clear that Watkins was an at-will employee who could be terminated at anytime. Watkins has failed to allege that he had an employment contract for a specific period of time. As a result, his claim for wrongful discharge must fail.

Watkins seeks to avoid the clear import of District of Columbia law by alleging that his discharge falls within a public policy exception to the District of Columbia's employment at-will doctrine. In support of this argument, he alleges that his termination was in retaliation for his having called possible federal securities law violations to the attention of ICMA–RC top management. Although a public policy exception to the employment at-will doctrine has been recognized in other jurisdictions, this Court is bound by District of Columbia law. In *Hall v. Ford, supra,* the Court of Appeals directly addressed this issue. The *Hall* court, after reviewing the decisions of the D.C. Court of Appeals, concluded that the D.C. courts have "refused to create an exception to this [at-will] rule for dismissals that violate public policy." *Id.* As a basis for this conclusion, the *Hall* court focused upon the D.C. Court of Appeals refusal in *Ivy v. Army Times Publishing Co.,* 428 A.2d 831 (D.C.1981) to grant an *en banc* rehearing to a case in which a panel of the court had dismissed, in an unpublished memorandum opinion, an employee's complaint which alleged a dismissal in violation of public policy. After reviewing D.C. law, the *Hall* court unequivocally declared: "The Clear lesson of *Ivy* is that the District of Columbia does not currently recognize a public policy exception to the at-will termination doctrine." *Hall,* 856 F.2d at 267. In accordance with the decision in *Hall,* this court finds that Watkins' claim

for wrongful discharge must be dismissed as a matter of law.

B. *Defamation: Damage to Reputation*

Watkins alleges that he has been defamed by ICMA–RC's "communications to public employers and public officials [which contained] false and defamatory statements about Harold Watkins." Amended Counterclaim ¶ 53. The only communication specifically identified in the Counterclaim, however, is the January 1989 edition of the ICMA–RC *Employer Bulletin. Id.* at 51. The *Bulletin* states in full:

> It has come to our attention that a former employee of the Retirement Corporation, discharged in 1987, has undertaken a letter writing campaign to employers in an attempt to discredit the organization. R.C. has taken legal action against this individual, and regrets any inconvenience this matter may have caused you.

In his response to ICMA–RC's motion to dismiss, Watkins identifies two additional statements that he claims to have been defamatory: 1) the allegations made in the complaint filed in this case by ICMA–RC; and 2) a January, 1989 letter from Dr. Robert E. Hancox, President and Chief Executive Officer of ICMA–RC, to Fairfax County (hereinafter "Hancox Letter").

As to the comments contained in ICMA–RC's complaint, it is clear in this jurisdiction and most others that comments contained in court related documents are privileged and cannot form the basis for a defamation action. As this Circuit recognized several years ago, "statements in pleadings and affidavits are absolutely privileged if they have enough appearance of connection with the case in which they are filed so that a reasonable man might think them relevant." *Brown v. Shimabukuro,* 118 F.2d 17, 18 (D.C.Cir.1941). Here, the statements in the ICMA–RC complaint are directly related to its cause of action against Watkins. Therefore, these statements are privileged as a matter of law. The Hancox Letter and the statements pub-

lished in the *Employer Bulletin* raise different legal issues.

■ Although in his Amended Counterclaim Watkins alleges that the statements in the *Employer Bulletin* are "false and defamatory," this Court agrees with ICMA–RC that the statements contained in the *Employer Bulletin* are factually correct. It is undisputed that Watkins was a former ICMA–RC employee in 1987 and that he subsequently wrote letters to numerous ICMA–RC customers in December, 1988 charging ICMA–RC with the mismanagement of assets invested in the ICMA Retirement Trust. Further, ICMA–RC through this lawsuit has undertaken legal action against Watkins in response to those letters. It is therefore apparent to this Court that the 1989 ICMA–RC *Employer Bulletin* contains absolutely no misrepresentations, is completely true and is therefore not actionable as defamatory language.

Similarly, the Hancox Letter on its face is not defamatory. That letter reads in relevant part:

A former employee, who was discharged by RC in 1987, has recently undertaken a campaign to discredit the Corporation, its Directors and Trustee's, and the firm's management by making allegations about the performance of the Balanced Fund. He raised the same issues about this fund to both the Board of Directors of the Corporation and Board of Trustees of the ICMA Retirement Trust. These independent governing bodies found his assertions without merit.

RC and its attorneys have attempted on numerous occasions to resolve with him the matter of his grievance against the company, but without success. Other than demanding more than a million dollars from RC, he has steadfastly refused to discuss this matter with the Corporation or its legal representatives.

Amended Counterclaim ¶ 97. This letter was written in response to Watkins' written allegations about ICMA's mismanagement of Trust funds. In large part, the content of the Hancox Letter is identical to that which was published in the *Employer Bulletin*. The additional representations made in the letter, as counsel for ICMA–RC has demonstrated, are corroborated by Watkins' own pleadings, submissions to the Court, and the statements of his counsel in a hearing conducted before this Court.

Specifically, Watkins' counsel acknowledged to this Court that Watkins had made a settlement demand for approximately one million dollars or more. Transcript of Hearing on Motion for Temporary Restraining Order, February 3, 1989, at 20–22 (hereinafter, transcript). Additionally, it is undisputed that Watkins approached both the ICMA–RC Board and the Trustees of the ICMA Retirement Trust and that each body rejected his allegations. Affidavit of Harold C. Watkins, ¶ 9 at 3; Transcript at 20. Finally, Watkins has averred that he instructed his legal representatives that "there was no basis for further discussion" with the attorneys for ICMA–RC. Watkins Affidavit, ¶ 9, at 3.

Watkins also seeks relief on the grounds of other unidentified "communications" that are alleged to have been defamatory. This Court agrees with ICMA–RC that this allegation is legally defective because for a complaint to state a claim for libel or slander it must set forth the "specific defamatory comments" or otherwise be "inadequate as a matter of law." *See Leo Winter, Inc. v. Department of Health and Human Services*, 497 F.Supp. 429, 432 (D.D.C.1980).

Accordingly, this Court has concluded that Watkins' counterclaim for defamation as it relates to the allegations made in the ICMA–RC complaint filed in this matter and the unidentified alleged defamatory statements fail to state a claim upon which relief can be granted. Similarly, this Court finds that the claims based on the statements contained in the *Employer Bulletin* and the Hancox Letter cannot be maintained. The statements at issue are factually correct and therefore non-defamatory. As to these claims there is no genuine issue as to any material fact, and therefore, this Court is granting summary judgment in favor of ICMA–RC.

### C. *1981 Claim*

Watkins also asserts a claim for relief under 42 U.S.C. § 1981. Amended Counterclaim ¶¶ 58–78. Section 1981 reads as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C.A. § 1981 (1981).

In his counterclaim, Watkins, a black male, alleges *inter alia*, that similarly situated white ICMA–RC employees have consistently received better treatment than him and that this disparate treatment is based solely on his race. It is also alleged that these same white employees, unlike Watkins, have obtained and enforced lucrative severance agreements. Amended Counterclaim ¶ 59.

The Supreme Court recently analyzed the language of § 1981 and its application to employment discrimination claims. *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The Court concluded, "Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." *Id.* 109 S.Ct. at 2372. The plain language of § 1981 protects two rights: "the same right ... to make ... contracts" and "the same right ... to ... enforce contracts." *Id.* First, as the *Patterson* Court noted, the statute prohibits a refusal to enter into a contract or an offer to contract only on discriminatory terms. *Id.* However, the right to make contracts does not extend to "conduct by the employer after the contract relation has been established, including breach of terms of the contract or imposition of discriminatory working conditions." *Id.* 109 S.Ct. at 2373. Second, the statute's protection of contract enforcement rights only seeks to ensure an individual the right to access a legal process that will fairly address and resolve contract-law claims without regard to race. "The right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights." *Id.*

■ Applying these principles to the instant matter, this Court is convinced that the allegations advanced by Watkins do not state a claim for relief under § 1981. The improper conduct alleged to have occurred neither involved a refusal on the part of ICMA–RC to make a contract with Watkins nor an attempt by ICMA–RC to interfere with his ability to enforce his established contract rights. Section 1981 "covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Id.* at 2374. Rather, the conduct by ICMA–RC which Watkins labels as racial discrimination is post-formation conduct by ICMA–RC relating to the terms and conditions of continuing employment. For the aforementioned reasons, Watkins' claim for relief under § 1981 is not actionable and must be dismissed as a matter of law.

### D. *Interference With Business and Contractual Relations*

■ In his Amended Counterclaim, Watkins alleges that ICMA–RC's intentionally interfered with his business and contractual relations. Amended Counterclaim ¶¶ 79–104. Watkins specifically alleges that agent's of ICMA–RC intentionally and maliciously terminated his contractual relationship with the corporation. Under District of Columbia law, the elements of a claim of tortious interference with contractual relations are 1) the existence of a legal contract; 2) defendant's knowledge of that contract; 3) intentional interference without justification; and 4) resulting damages. *Dunn v. Cox*, 163 A.2d 609, 611 (D.C.App. 1960); *In re Ashby Enterprises*, 47 B.R. 394, 397 (D.D.C.1985). Additionally, "It is

a well settled principle of law that this tort arises only when there is an interference with a contract between the plaintiff and a third party. A defendant's conduct under his own contract with the plaintiff may or may not rise to the level of a breach of that contract, but it cannot support an action for interference with it." *Donohoe v. Watt*, 546 F.Supp. 753, 757 (D.D.C.1982), *aff'd*, 713 F.2d 864 (D.C.Cir.1983). Here, Watkins has failed to allege an interference by ICMA–RC with any contract between Watkins and a third party. Accordingly, the Court finds that his allegations regarding interference with his contractual relations with ICMA–RC as a matter of law fail to state a claim upon which relief may be granted.

■ Watkins also alleges that ICMA–RC has "intentionally and maliciously" interfered with his contractual rights by communicating with his potential client base. Amended Counterclaim ¶¶ 100–103. In making these allegations, Watkins' seeks to assert a claim for Intentional Interference with Prospective Contractual Relations. Restatement (Second) of Torts § 766B. Under this theory, "business expectancies, not grounded on present contractual relationships but which are commercially reasonable to anticipate, are considered to be property and therefore protected from unjustified interference." *Carr v. Brown*, 395 A.2d 79, 84 (D.C.App. 1978). A necessary prerequisite to recovery under this theory is that the interference alleged have been both intentional and improper. Plaintiff also must have been suffered some damage as a result of the alleged interference. *Brown v. Carr*, 503 A.2d 1241, 1247 (D.C.App.1986); Restatement (Second) of Torts § 767, Comment d. Here, the intentional and improper conduct of ICMA–RC is alleged to have been its communicating to its customers about this lawsuit and disputing the allegations of mismanagement which Watkins' had made in a December, 1988, letter to numerous ICMA–RC customers.

In relation to this customer base, both ICMA–RC and Watkins had become competitors. Watkins was soliciting these customers and ICMA–RC was attempting to maintain its existing relationship with these clients. Competitive activity does not by itself constitute intentional interference with prospective business advantage. "If one party is seeking to acquire a prospective contractual relation, the other can seek to acquire it too." Restatement (Second) Torts § 768, Comment a. However, a party cannot employ wrongful or improper means to accomplish its competitive objective. Thus, a resort to physical violence, fraud, civil suits or criminal prosecutions is improper and not protected competition. *Id.* Comment e.

One competitor is free to communicate truthful information about another competitor to a third person. Comment b of section 772 of the Restatement provides:

> There is of course no liability for interference with a . . . prospective relation on the part of one who merely gives truthful information to another. The interference in this instance is clearly not improper. This is true even though the facts are marshaled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his contract or refusing to deal with another. It is also true whether or not the information is requested.

As noted above, it is alleged that ICMA–RC during its communications with third parties made false statements about Watkins which led these parties to avoid doing business with him. The only such statement that Watkins points to in his Amended Counterclaim is an excerpt from a letter that was sent by Mr. Hancox of ICMA–RC to Fairfax County. Amended Counterclaim ¶ 97; *see supra* at 7. This letter, however, merely relates what had transpired between ICMA–RC and Watkins and responds to the December letters that Mr. Watkins had sent to ICMA–RC's clients. As discussed previously, Watkins' own pleadings, submissions, and the statements of his attorney serve to corroborate the essential truth of the facts that were published in this letter. *See supra* at 4. Therefore, as a matter of law, this Court concludes that this communication was not

improper and therefore cannot provide the basis for a claim of tortious interference with prospective contractual relations.

Furthermore, Watkins has failed to allege any other particular communications that he believes to have been tortious. Rather, his allegations are vague and conclusory. This Court is faced with a complaint that advances sweeping allegations which by themselves cannot support a cause of action for interference with prospective business advantage.

This Court concludes that Watkins' claim for "intentional interference with business and contractual relations" cannot be maintained. Accordingly, summary judgment is entered in favor of ICMA–RC as to this count of Watkins' Amended Counterclaim.

## III.  CONCLUSION

It is the Court's view these counterclaims advanced by Watkins border on the frivolous and it is quite clear that these claims were advanced only in an attempt to frustrate the plaintiff, ICMA–RC.

An appropriate order accompanies this opinion.

### ORDER

Upon consideration of plaintiff-defendant International City Management Association Retirement Corporation's (ICMA–RC) motion to dismiss defendant-plaintiff Harold C. Watkins' counterclaims for 1) wrongful discharge; 2) defamation—damage to professional reputation; 3) violation of 42 U.S.C. § 1981; and 4) intentional interference with business and contractual relations; and the opposition thereto, and in accordance with the opinion issued this date, it is

ORDERED that ICMA–RC's notion to dismiss Watkins' counterclaims for wrongful discharge and § 1981 violations is GRANTED.

FURTHER ORDERED that summary judgment be entered in favor of ICMA–RC as to Watkins' counterclaims for def-

amation and intentional interference with business and contractual relations.